ST. LOUIS, KEOKUK AND NORTHWESTERN RAILROAD COMPANY v. THE KNAPP-STOUT & CO. COMPANY, Appellant.

Division Two, February 26, 1901.

1. **Condemnation: RESERVATION: AMENDING PETITION.** It is permissible for a railroad company to reserve to the landowner, surface crossings over its projected road bed and track. And it is also proper to permit the railroad to amend its petition by adding allegations making such reservations. (Following Railroad v. Clark, 121 Mo. 169, and Railroad v. Stockyards, 120 Mo. 540.)

2. ————: INSTRUCTIONS. Since plaintiff followed the instructions approved in Railroad v. Stockyards, 120 Mo. 541, and avoided all the errors pointed out in the other instructions there given, and followed the suggestions of this court as to what the instructions in a condemnation case should contain, those given in this case are approved.

St. L., K. & W. Ry. Co. v. Knapp-Stout & Co. Company.

3. ——: ——: SPECULATIVE VALUES. An instruction in a condemnation proceeding told the jury that "the market value of the property is not to be determined by the value of the strip in question to plaintiff, nor plaintiff's necessity of acquiring it, nor by its peculiar value to defendant; these considerations must in no way be allowed to affect the determination by the jury of the value of the whole property, or of the strip sought to be appropriated by plaintiff in this proceeding." *Held*, that this instruction was not argumentative, but a correct statement of the law. It told the jury what things not to include in making up their verdict, among them, speculative values.

4. ——: BURDENS. Where the landowner assumed at the trial the opening and closing of the case, and the right to show the value of the land taken, and damages to the remainder, and the court put upon the railroad the burden of proving the benefits, it is too late, on appeal, to complain of an instruction given for the railroad to the effect that the burden of proving by the preponderance of the evidence that the landowner has sustained damages, is upon him.

5. ——: MEASURE OF DAMAGES: INCONVENIENCES, ETC. In condemnation proceedings in cases in which only a part of the tract is condemned, injury to business, loss of profits, inconvenience to the owner, damage to personal property or the expense of removing it, are not to be estimated as distinct elements of damages. The measure of compensation and damages in such cases, is the market value of the land taken, and the damages to the remainder by reason of the uses to which the land taken is put, less any benefits that are peculiar to the tract of land arising from such use.

6. ——: ——: USE OF WORDS "OR DAMAGED" IN CONSTITUTION: APPLICABILITY. The use of the words "or damages" in section 21, article 2, of the present Constitution, was not intended to and did not affect the rule of compensation in condemnation proceedings in which the whole or a part of a piece of property is taken for public use. Those words apply to property which has been damaged, but not taken, such as the grading of a street, etc.

7. ——: ——: ENGLISH RULE. The English rule for the measure of compensation in condemnation proceedings, differs widely from the Missouri rule, because the language of the act of Parliament fixing the measure of compensation and damages differs from that used in our Constitution.

8. ——: AMOUNT FIXED BY JURY. Where the amount of damages awarded by the jury is supported by the evidence, and the instructions given were correct, the verdict will not be disturbed.

9. ———: INTEREST ON EXCESS OVER AWARD. Where a company brings a condemnation proceeding, and the landowner is by the commissioners awarded a certain sum as damages, which the plaintiff pays into court and the landowner proceeds to take down the money, and on a trial before the jury is awarded a less sum, the plaintiff is not entitled to interest on the excess of the first award over the final award. Interest is allowed by statute, and no statute allows interest under such circumstances.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*Warwick Hough, Clinton Rowell, J. H. Zumbalen* and *John H. Douglass, Jr.,* for appellant.

(1) The court improperly allowed the appellee to file its second amended petition, giving crossings to the defendant at some future date, and should have sustained the appellant's motion to strike out the clause designated therein. Plaintiff's instruction numbered four, in so far as it covered the same question, was clearly erroneous. Railroad v. Clark, 121 Mo. 197. (2) Instructions for plaintiff are argumentative, assume facts as proven and are comments upon the testimony. Railroad v. Union Stock Yards, 120 Mo. 541; Couch v. Gentry, 113 Mo. 248. (3) Instruction numbered five, which puts the burden upon the defendant to show damages by preponderance of evidence, is erroneous. Railroad v. Cicero, 154 Ill. 656; Railroad v. Naperville, 166 Ill. 87; Bennett v. Woody, 137 Mo. 377. (4) Defendant's instructions numbered one and two, which were refused by the court, in reference to damages for readjustment, should have been given. Bridge Co. v. Schaubacher, 57 Mo. 582; Railroad v. McGrew, 104 Mo. 284; Sedgwick on Damages (8 Ed.), sec. 1080;

Knoch v. Railroad, 38 L. J., C. P. 78; Cameron v. Railroad, 16 C. B. (N. S.) 446; Jubb v. Dock Co., 9 Ad. and El. (N. S.) 443; White v. Commissioners, 22 L. T. R. (N. S.) 591; Patterson v. Boston, 23 Pick. 425; Railroad v. Weiden, 70 Mich. 390; Railroad v. Piel, 87 Ky. 267; Railroad v. Getz, 113 Pa. St. 214; Railroad v. Eby, 107 Pa. St. 166; Railroad v. Capps, 67 Ill. 667; Railroad v. Hock, 118 Ill. 589; Railroad v. Schneider, 127 Ill. 147; St. Louis v. Brown, 56 S. W. 302. (5) Defendant's instruction numbered three, in reference to the right to cross plaintiff's tracks with Merchants Bridge & Terminal Railway Co. switches, should have been given. Railroad v. Clark, 121 Mo. 169. (6) The question raised by defendant's instruction numbered four, refused in reference to damages for increased expense of conducting its business, should have been given. Constitution 1875, art. 2, sec. 21; R. S. 1889, secs. 2734, 2736; Sedgwick on Damages (8 Ed.), secs. 1109, 1106, 1108, 1114, 1080; Bridge Co. v. Schaubacher, 57 Mo. 582; Knock v. Railroad, 38 L. J., C. P. 78; Cameron v. Railroad, 16 C. B. (U. S.) 446; Jubb v. Dock Co., 9 Ad. and El. (N. S.) 443; White v. Commissioners, 22 L. T. R. (N. S.) 591; Patterson v. Boston, 20 Pick. 159, 23 Pick. 425; Penney v. Commonwealth (Mass.), 53 N. E. 865; Railroad v. Weiden, 70 Mich. 390; Commissioners v. Moesta, 91 Mich. 149; Railroad v. Piel, 87 Ky. 267; Railroad v. Getz, 113 Pa. St. 214; Railroad v. Eby, 107 Pa. St. 166; Railroad v. Capps, 67 Ill. 667, 72 Ill. 188; Railroad v. Hock, 118 Ill. 589; Railroad v. Schneider, 127 Ill. 147; Railroad v. Naperville, 166 Ill. 87; Railroad v. Chicago, 151 Ill. 359; Railroad v. Union Depot Co., 125 Mo. 95; Railroad v. Railroad, 100 Ill. 21; Railroad v. Railroad, 105 Ill. 119. (7) The damages awarded in this case are grossly inadequate.

*J. H. Drabelle* and *E. S. Robert* for respondent.

(1) The court properly allowed the second amended petition to be filed. Railroad v. Clark, 121 Mo. 169. (2) Appellant's instructions have all been approved by this court, except the one on the burden of proof, in the case of Railroad v. Union Stock Yards, 120 Mo. 541. The instruction numbered 5, putting the burden of showing damages on the defendant, is correct. Lewis on Eminent Domain, sec. 426; Railroad v. North, 31 Mo. App. 349; Railroad v. Donivan, 149 Mo. 101. (3) The rule of damages in this State is the difference between the fair market value of the whole property before and its value after the appropriation in view of the uses to which the land condemned could thereafter be applied. Lee v. Railroad, 53 Mo. 178; Railroad v. Ridge, 57 Mo. 599; Railroad v. Waldo, 70 Mo. 629; Railroad v. Calkins, 90 Mo. 538; Railroad v. Story, 96 Mo. 611; Railroad v. Baker, 102 Mo. 553; Railroad v. McGrew, 104 Mo. 282; Railroad v. Porter, 112 Mo. 361; Springfield v. Smook, 68 Mo. 394. (4) Defendant's instruction numbered 3, with reference to the right to cross plaintiff's tracks with Merchants Bridge tracks, should not have been given, as an ordinance is necessary to make a connection with the Merchants Bridge tracks. (5) The damages are excessive. The defendant's property was brought into the market by the building of the railroad through it, and its value enhanced. (6) The defendant asked twelve instructions. The refusal to give them could be justified on account of their number. Flynn v. Railroad, 43 Mo. App. 424; Renshaw v. Insurance Co., 33 Mo. App. 394.

*Jno. H. Drabelle* and *E. S. Robert* for appellant on cross-appeal.

(1) If the condemning company pays the commissioners' award into court, and takes possession of the property, and

there is a new assessment by a jury, and an increased award, the company must pay legal interest on the excess. Railroad v. Fowler, 113 Mo. 475; Railroad v. Clark, 119 Mo. 373; Railroad v. Clark, 121 Mo. 169; Railroad v. Eubanks, 130 Mo. 274; Railroad v. Greeley, 23 N. H. 237; Railroad v. Shattuck, 23 N. H. 269; West v. Railroad, 56 Wis. 318. (2) Where the amount of the commissioners' award has been deposited by the condemning company in court for the use of the owner, and the same is taken down by the owner, if the award is decreased on the trial before the jury, the company is entitled to interest on the amount of the diminution. 10 Am. and Eng. Ency. of Law (2 Ed.), p. 1188; Randolph on Eminent Domain, sec. 280; Watson v. Railroad, 57 Wis. 332; Railroad v. Fowler, supra; Railroad v. Clark, supra; Railroad v. Eubanks, supra. (3) But, aside from the above precedents, the general principles of the law regarding the allowance of interest support the allowance in this case. Thus, when one receives an advantage or benefit from the use of the money of another, he is chargeable with interest. 11 Am. and Eng. Ency. of Law, p. 395; Lewis v. Bradford, 8 Ala. 632; Miller v. Bank, 8 Whar. (Pa.) 503; Sims v. Willing, 8 S. & R. (Pa.) 103; Succession of Mann, 4 La. Ann. 42; Curtis v. Adkins, 1 Houst. (Del.) 382; s. c., 68 Am. Dec. 422; Mattingly v. Boyd, 20 How. (U. S.) 128; Smith v. Bank, 60 Miss. 69; Blodgett v. Gardiner, 45 Maine, 542; Candee v. Webster, 9 Ohio St. 452. (4) Another principle is that whenever money has been received by a person which, *ex aequo et bono*, he ought to refund, interest follows as a matter of course. 11 Am. and Eng. Ency. of Law (1 Ed), p. 395; Barr v. Hasseldon, 10 Rich. (S. C.) 53; Rapelje v. Emery, 1 Dall. 349; Abbott v. Wilmot, 22 Vt. 437; Close v. Fields, 13 Texas, 623; Wood v. Robbins, 11 Mass. 504; Bank v. Harris, 118 Mass. 147.

*Warwick Hough, Clinton Rowell, Joseph H. Zumbalen* and *John H.Douglass, Jr.*, for respondent on cross-appeal.

(1)   (a) The railway company on principle is not chargeable with interest on the excess of the final award over the commissioners' award, and this court, on full consideration, will not so hold.   Railroad v. Fowler, 113 Mo. 458; Railroad v. Clark, 119 Mo. 357; Snyder v. Cowan, 120 Mo. 389; Railroad v. Eubanks, 130 Mo. 270.   (b) But even if it should be held that the railway company must pay interest on the increase in the award, it by no means follows that the landowner must pay interest on the amount to be deducted, as claimed in this case.   Railroad v. Fowler, 113 Mo. 458; Railroad v. Clark, 119 Mo. 357; Snyder v. Cowan, 120 Mo. 389; Railroad v. Eubanks, 130 Mo. 270; In re Railroad, 44 Hun. 117.   (2)   (a) Interest is purely a creature of statute, and can be recovered only in those cases in which the statute provides for it.   2 Am. and Eng. Ency. of Law (1 Ed.), p. 379; Ord on Usury, 31; Perley on Interest, 23; In re Gossman, L. R. 17 Ch. Div. 771; Railroad v. Craig, 72 Ill. 148; Chicago v. Allcock, 86 Ill. 384; Railroad v. Conway, 8 Colo. 1; Cherry v. Mann, Cooke (Tenn.), 268; Caruthers v. Andrews, 2 Caldwell (Tenn.), 381; Close v. Fields, 2 Tex. 232; Lewis v. Paschal, 37 Tex. 315; Frazer v. Boss, 66 Ind. 1; Hamer v. Kirkwood, 25 Miss. 95; Warren Co. v. Klein, 51 Miss. 807; Clay Co. v. Supervisors, 64 Miss. 534; Klages v. Terminal Co., 160 Pa. St. 388; In re Bridge Co., 187 N. Y. 95; Kenny v. Railroad, 63 Mo. 99; State ex rel. v. Harrington, 44 Mo. App. 297; Coquard v. Prendergast, 47 Mo. App. 243; R. S. 1899, sec. 4150.   (b) In Missouri there is no statute authorizing the recovery of interest in such a case.   R. S. 1899, secs. 3705, 3707, 2869, 225.

GANTT, J.—This is an appeal in a condemnation proceeding by the plaintiff, a railway company, to obtain a right of way over certain real estate in the city of St. Louis, belonging to the Knapp-Stout & Co. Company. The jury awarded the Knapp-Stout & Co. Company $21,500, and from the judgment on said verdict said last named company has appealed. The original petition was filed on the twenty-second day of November, 1890. Commissioners were appointed, who filed their report December 22, 1891, awarding to the Knapp-Stout & Co. Company $44,000, as damages for the appropriation of the land described in the petition for a right of way.

Exceptions were filed to the report, but the $44,000 was paid into court by the plaintiff railroad company and possession of the route taken by said company and its track constructed thereon. The exceptions were afterward sustained on March 11, 1892. On the fourteenth of October, 1895, an amended petition was filed, substantially the same as the original except it included a stipulation in reference to the manner in which the railroad company would build its road over defendant's land, in which it gave defendant certain underground crossings from east to west.

On the eighth of February, 1897, the plaintiff filed a second amended petition, substantially like the amended petition, but which contained not only the stipulation for the underground crossings, but reserved to the defendant two surface crossings over its right of way, one in prolongation of Salisbury street, and the other wherever defendant, its successors or assigns shall designate, "whenever the land of said owner between Hall street and said right of way shall be filled up to the grade now or hereafter established by the city of St. Louis for Salisbury street, and the land of defendant in the east of the right of way shall be filled up to the grade now or hereafter established by the city to be constructed and maintained

by the railroad." A motion to strike out the allegations as to the reservations of these surface crossings was overruled, and defendant excepted. The right of way condemned was fifty feet wide through a tract containing twenty acres, in the northern part of St. Louis, lying between Destrehan street on the south, and Bremer avenue on the north, Hall street on the west and the Mississippi river on the east, and amounted to a fraction less than two acres of land. The defendant was engaged in manufacturing and selling lumber, and was using this twenty-acre tract for the purpose of yards for storing its stock. It also owned three acres west of Hall street and ten and one-half acres north of Bremer avenue, which it used in said business. The estimated value of the product it handled yearly was in the neighborhood of $1,000,000.

The right of way was laid out across the eastern part of the twenty-acre tract, at a distance of about four hundred feet west of the Mississippi river, on which had been the levee and the right of way extended the whole length north and south of this dyke. The main portion of the tract was lower than the grade of Hall street and was in part protected from the high waters of the river by the levee.

In the construction of the railroad in pursuance of the stipulation for subways, the company raised its tracks three feet in order to give ample head-room for the subways.

In addition to raising its tracks the railroad company put in two 35-foot steel bridges, one at Salisbury street, and one at the south of the property, one-half of which was on defendant's land, and one-half on Mallinckrodt's. It also left fourteen-foot vents at the north end, giving defendant the three underground crossings as agreed in the stipulation. Salisbury street runs through the lumber yard from Hall street to the west line of the wharf; the lumber company maintained a gate across Salisbury street at the Hall street end. While the

levee on which the railroad was constructed protected defendant's lumber yard on the east and south sides, in the high water of 1892 it became necessary to build temporary levees up to Bremer avenue and west on Bremer avenue.

Prior to the construction of the railroad, the defendant lumber company had cut the levee down at the Salisbury street crossing and at the south side of the property, to make roads, and it was on these roads the subways were constructed. In seasons of high water they had to be filled.

Various and conflicting estimates were given by the witnesses. The experts in real estate on the part of the railroad placed the value of the land taken at from $4,000 to $8,000 an acre, but a fair average of their testimony would be about $5,000 an acre.

About eighteen months before the suit was commenced the defendant gave $100,000 for the twenty-three and one-quarter acres. Defendant's witnesses placed the value at about $20,000 an acre.

The theory of defendant was that in addition to the actual appropriation of the two acres it suffered damage to the remainder by reason of being cut off from access to the river. Whereas plaintiff's witnesses gave it as their opinion that the location of the railroad right through the lumber yard and the increased switching facilities was a benefit from ten to forty per cent to the portion uncondemned.

To reduce this benefit defendant claimed it had a switch connection at the northern line of its property connecting with all the railways entering St. Louis, and that on Hall street, west of the property, were the terminal or switching railways of St. Louis Transfer Company and the Merchants Terminal Railway Company, which were bound to connect with the property. But as to this claim it appeared that the switch connection at the northern line was a Wabash switch, had been

granted to one Schulenberg in violation of the laws of this State, and that no connection could be required of the terminal companies without ordinances of the city permitting it, whereas plaintiff's road could be required to connect because it was not compelled to cross any street or alley to make the connection with defendant's lumber yard.

In ordinary stages of water the defendant could haul its lumber from the landing on the east under plaintiff's railroad, but it insists that in extremely high water the railroad would impede it because it would not have sufficient space to work in, whereas, before its construction, the lumber could be taken from the rafts on top of the dyke. On the other hand, defendant's witness, Mr. Durfee, testified that when the river was high, the company could only tie up one raft because the current was too strong; that the raft must be a small one.

The evidence for defendant not only showed the physical conditions before and after the appropriation of the strip, but the court admitted evidence of estimates of the necessity for, and the cost of readjusting the business to the yard as changed; and the increased expense of transacting the lumber business as the result of the construction of the railroad.

The evidence was that they did as large a business after as before the railroad was built, and the court excluded evidence as to whether the defendant's books showed any increase in expenses.

The ordinance of the city was in evidence granting the plaintiff railroad the right to enter the city at its northern limit and to occupy certain streets until it reached Franklin avenue, and requiring it to connect with business establishments by switches. The grade of the western wharf-line at the foot of Salisbury street at the top of the curb is 106 feet.

Other facts in evidence may be noted in the course of the opinion.

I.   The foregoing summary of the evidence will enable us to grasp the points of controversy between the parties to this proceeding.

It is first insisted that the circuit court erred in refusing to strike out of the second amended petition of the plaintiff company, the allegation of the reservation of two surface crossings over its projected roadbed and track, to the defendant lumber company.

The ground of this complaint is that it was an effort on the part of the plaintiff railroad to reduce the damages of defendant by providing for some future possible change in the situation of the ground.

This court in Railroad v. Clark, 121 Mo. 169, passed upon this exact question and ruled adversely to defendant's contention.

In that case the same argument now made was pressed upon us, but after the most mature deliberation, we held that the condemnation of a right of way necessarily gave the condemning company an exclusive easement over the surface of the real estate condemned, and of the claim now made, we said, "We are aware there are cases which seem to hold that to allow a company to reserve a right to the owner of the land, when he does not ask it, is to pay him for the land taken in something other than money; but it must be evident that such reasoning is not sound.   The reservation of the easement being made, the damages are assessed in view of the interest thus retained and not condemned.   The company pays for what it needs and takes, and the landowner is allowed all the damages which he in fact sustains.   And we further held that if a condemning company proposed to give such a reservation it should be done in the original or amended petition."   The effort to distinguish this case from that by insisting that the time when a grade crossing will be needed is so remote as to be purely

speculative, is not founded on the facts. The evidence discloses that the grade for the wharf and for Salisbury street had already been fixed in pursuance of a city ordinance and at the crossing of the tracks of defendant at Salisbury street was at an elevation of 106 feet.

Reaffirming the Clark case and the Stock Yards case, 120 Mo. 541, we hold the amendment was properly permitted by the circuit court.

II.    The objections to the instructions were all considered in Railway Company v. Stock Yards, 120 Mo. 541, and all the emendations then required by this court in that case were made by plaintiff in this case and the directions given by this court as to the giving of the instructions numbered 11 and 12 in that case were followed in this case by giving those instructions under different numbers in the language dictated by this court.

The circuit court also avoided the form condemned in that case and instructed separately and distinctly upon each proposition by itself. Having conformed to the specific instructions of this court, that court is not to be convicted of error for so doing.

As to the length of the instructions, certainly the honors are even.

Specific objection is made to so much of the first instruction as is couched in these words: "The market value of the property is not to be determined by the value of the strip in question to the plaintiff, nor by plaintiff's necessity of acquiring it, nor by its peculiar value to defendant. These considerations must in no way be allowed to affect the determination by the jury of the value of the whole property, or of the strip sought to be appropriated by plaintiff in this proceeding." Certainly this is the law, and this instruction met the approval of this court in the Stock Yards case, 120 Mo. 541. It is not

argumentative. It is a plain direction to the jury that they must exclude in their estimate of the fair market value of the land, certain considerations which the law excludes, and which a jury of laymen might otherwise deem to be proper elements of damages. Nor was error committed in instructing the jury that they could not consider speculative values. Moreover, the definition of "market value" is in all its substantial features like that given by the defendant in its own instruction on that subject. A condemning company is not chargeable with speculative values. The rule when not controlled or modified by statute, is that the damages resulting to the landowner from the exercise of the right of eminent domain by a railroad company should be estimated as of the date of the taking or appropriation. [Mills on Eminent Domain, sec. 174; Pierce on Railroads, p. 209.]

To allow a jury to speculate on what city property may be worth at some future day, would indeed be "a roving commission." As already said, these instructions were gone over in the Stock Yards case, the errors then made were pointed out and have been eliminated, and they must be considered settled.

III. The third point for reversal is made in this court, for the first time during this proceeding. It is leveled at instruction numbered 5 given by the court for plaintiff, in these words: "The court instructs the jury that the burden of proving by a preponderance of evidence, that the Knapp-Stout & Co. Company has sustained damages, as in the other instructions defined, is upon the Knapp-Stout & Co. Company."

In order to fully appreciate this point, it must be borne in mind that in the circuit court the defendant, the Knapp-Stout & Co. Company, assumed and was accorded the right to open and close the case, both in the introduction of its testimony

and the argument of the cause.    In its behalf the court gave
an instruction in these words:

1.    "The court further instructs the jury that although
the plaintiff has by law the right to locate its railway over the
property of the defendant, and thereby take its property
against its will; the law also declares that private property
shall not be taken or damaged without just compensation to
be paid to the owner; and what in this case constitutes such a
just compensation, is a question to be decided by your verdict.
In passing upon this question, if the jury find from the evi-
dence that the property is damaged, the jury should allow the
defendant:

"First.    For the market value of the property taken as
it is taken, by the plaintiff, as shown by the evidence.

"Second.    For such damages, if any, to the remainder
of the defendant's said tract of property, caused by the estab-
lishment, erection and maintenance of plaintiff's railway over
the defendant's lands, which they may find from the evidence
it has sustained.

"In ascertaining the value of property, as taken in this
case, the jury is instructed that they are to determine its fair
market value on December 22, 1891; that by the market value
of property is not meant what could be obtained for it at
forced sale, or at a sudden demand for the sale thereof, but
the market value referred to is when the man owning the prop-
erty is willing, but not obliged, to sell it, and the party to
whom it is offered is willing or desires to purchase the same,
but is not obliged to do so; that in estimating its value for the
purpose of this case, the jury should take into consideration
all the capabilities and facilities of the property, and all the
uses to which it may be applied or for which it is adapted,
having regard not alone to the existing business wants of the
community, but also such uses as may be reasonably expected
in the near future."

In another instruction the court put the burden of proving benefits on the plaintiff.

Having assumed and obtained the right to show in the first instance the value of its land taken, and the damages to the remainder of the tract not taken, and the court having properly at its request placed the burden of proving the benefits, if any, upon plaintiff, it is now too late for defendant to complain of a course which it invited.

The point must be ruled against it.

IV. The fourth proposition advanced by the lumber company for a reversal is the refusal of the court to give instructions numbered 1 and 2 asked by defendant, which would have authorized the jury to allow defendant the cost of the removal of lumber from the right of way and from the vicinity of the subways; the cost of fencing off the right of way appropriated and the cost of constructing the subways and repiling lumber. These two instructions not only conflict with each other as to the measure of defendant's damages, but are in direct conflict with those asked by defendant and given by the court in its behalf. Surely, the circuit court can not be convicted of error in refusing to give contradictory instructions for any party to a suit. No such practice has ever been approved by this court. But waiving this, the said instructions did not declare the law. The cases of Hannibal Bridge Co. v. Schaubacher, 57 Mo. 582, and Railroad Co. v. McGrew, 104 Mo. 282, do not sustain defendant, because, as was pointed out in Kansas City v. Morse, 105 Mo. 519, referring to Bridge Co. v. Schaubacher, supra, "the question there considered was as to whether defendant could have compensation for damages to property not taken, but used in connection with that which was taken. In discussing the measure of damages it was assumed, not decided, that the defendant had the right to remove the malthouse, horse-power, pump and pipe from

the property actually taken; for there was no contest between the parties to the suit on that point."

In the McGrew case, this court, at page 287, says: "The land actually taken was of insignificant value. The damages claimed by defendant, and not controverted by plaintiff, was on account of interruption of the mining business of defendant, the expense of readjustment, and the loss while necessarily engaged in making changes."

And in Railroad Co. v. Clark, 121 Mo. l. c. 199, this court states that the above was the theory upon which the McGrew case was tried.

We think it is of the utmost importance that the rule of estimating the damages resulting from the appropriation of land in these proceedings should be uniform.

It is the settled law of this court that the measure of compensation and damages in cases in which only a part of a tract is condemned, as in the case at bar, is the market value of the land taken for the right of way, and the damages to the remainder by reason of the railroad running through it, less any benefits that are peculiar to the tract of land arising from the running of the road through it. [Bridge Co. v. Ring, 58 Mo. 491; Railroad v. Waldo, 70 Mo. 629; Railroad Co. v. Story, 96 Mo. 611; Railroad Co. v. Baker, 102 Mo. 553.]

Injury to business, loss of profits, inconvenience to the owner, damage to personal property or the expense of removing it, are not to be estimated as distinct elements of damages.

In other words, this court has again and again held that when a part only of a man's realty is taken under condemnation proceedings, "the measure of damages is the difference between what was the fair market value of the whole tract or property before, and its fair market value after the appropriation, in view of the uses to which the land condemned should thereafter be applied." And this is the general rule in most

of the States.    [2 Lewis on Eminent Domain (2 Ed.), sec. 464; Braun v. Railroad, 166 Ill. 434; Railroad v. Stickney, 158 Ill. 362; McMahon v. Railroad, 6 South. Rep. 640.]

Numerous English cases have been cited by counsel for defendant, but it is sufficient to say that the act of Parliament differs materially from ours, in that it allows not only "full compensation for the value of the lands taken and used," but "all damages sustained by such owners, occupiers, and other parties by reason of the exercise, as regards such lands," of the power of eminent domain.    [8 and 9 Vic., chap. 20, sec. 6.]

In this connection it is proper that we should consider the position of the learned counsel that the addition of the words or "other property," has modified the old rule in this State.  An examination of the statute (sec. 2734, R. S. 1889), will disclose the fact that with the exception of these words it is in all respects the same as it was prior to the adoption of the Constitution of 1875.

We think it is clear that these words in this section had no reference to the words "or damaged" inserted by the convention in section 21 of article 3 of our Constitution.

No doubt can exist as to the purpose of the words "or damaged."    It was not to add new elements to the "just compensation" guaranteed by the Constitution when private property was appropriated for public use, whether the whole or a part only was taken, for if the position assumed by counsel is correct it would justify consequential damages when the whole is taken, as well as when a part only is appropriated.

The history of this change in our organic law is so well known, that it seems to be a work of supererogation to again repeat it.    Prior to the adoption of the Constitution of 1875 this court had uniformly ruled except in a single case, afterwards overruled, that any damages resulting to an abutting owner from a change of grade of his street by a municipality

was *"damnum absque injuria,"* for which the municipality was not liable, unless the injury could be shown to have resulted from the negligent performance of the work. Such being the law, the convention deemed it inequitable, and inserted these words "or damaged" so as to provide compensation when property was damaged, though not taken under the circumstances just mentioned.

In Hickman v. Kansas City, 120 Mo. 110, after referring to the old rule, this court through BRACE, J., said: "To uproot this doctrine, and provide for compensation when property is, damaged, as well as when it is taken for public use, the eminent domain clause in the Constitution of 1865 was amended, by the Constitution of 1875, to read as quoted, and since it has been considered the settled law in this State, that 'when property is damaged by establishing the grade of a street, or by raising or lowering the grade of a street previously established, it is damaged for public use within the meaning of the Constitution.'"

Prior to the above decision this court, in the case of State ex rel. v. City of Kansas, 89 Mo. 34, after holding that the rule of just compensation established by the courts under the Constitutions of 1820 and 1865 had not been changed by the Constitution of 1875, construes the amended instrument in the following language: "It may also be observed that while the Constitution of 1820 and 1865 only allowed just compensation for private property taken for public use, the Constitution of 1875 provided that it should neither be taken nor damaged without just compensation. The addition of the word 'damaged' was evidently designed to provide for a class of cases like the case of Gurno v. City of St. Louis, 12 Mo. 414, where a party whose property, though not taken, was damaged for public use, was held to be without remedy or redress. And it is to this class of cases that the words above considered

in the second sentence in section 21, article 2, of our present Constitution peculiarly applies."

Nothing more need be added to emphasize our opinion that the addition of the words "or damaged" was not intended to and did not affect the rule of compensation in condemnation proceedings, in which either the whole or a part of a piece of property is taken for public use.

That rule is the same as to property actually taken in whole or in part just as it was before the adoption of the Constitution.

V.  Error is also assigned upon the refusal of defendant's instruction numbered 3 : "The court instructs the jury that by the provisions of ordinances numbered 14078 and 15713, given in evidence, the Merchants Bridge Terminal Railway Company must connect by switches and sidetracks its main tracks in Hall street to and with any warehouse, factory, store, lumber, coal or stock yard, or any commercial or manufacturing establishment, of any individual or corporation located upon defendant's tract of land; but the jury are instructed that such switch tracks can not cross the plaintiff's railroad as extended over the property of the defendant."

Ordinance numbered 14078 provides that the Terminal company "should, when required, connect its tracks, by switches and sidetracks with any other railroad, depot, warehouse, factory, store, lumber, coal or stock yard, or depot yards, or any commercial or manufacturing establishment *located adjacent to the railway of said company,* but that no switches and sidetracks should be allowed along or across any alley, street or public highway unless authority be granted by the Municipal Assembly."

The evidence clearly established that the tracks of the Terminal company are wholly in Hall street and no where touch or run through defendant's twenty-acre tract.

In Railroad v. Clark, 121 Mo. 169, the railroad was adjacent to Clark's land, no street or alley intervened as does Hall street between defendant's land and the Terminal Railroad, and by the very terms of the ordinance the Terminal company is not required to connect with defendant's lumber yard when a street, alley or other highway intervenes without authority of the Municipal Assembly. As no such authority had been obtained, the instruction obviously drew the unwarranted inference and the court properly refused it.

VI. As to the point that the damages ($21,500) were inadequate, it remains only to say that the question was submitted to the jury under proper instructions, their verdict has met the approval of the circuit court, and so far as we are able to judge the jury awarded defendant no insignificant sum for less than two acres of land in a sparsely settled portion of the city. Many of the estimates made were utterly unreasonable. The lumber company bought the land for less than $5,000 an acre, not exceeding eighteen months before it was appropriated, and yet the jury awarded defendant over $10,000 an acre for the same land. We think the verdict was supported by the evidence, and when this is so, the verdict will not be disturbed, as it was the province of the jury to pass on the credibility of the evidence and estimate the damages. The judgment in favor of defendant for $21,500, is affirmed.

VII. The cross-appeal of the plaintiff from the refusal of the court to allow it interest on the judgment in its favor for the excess of the money paid into court over and above the compensation and damages finally allowed defendant and which had been paid over to defendant and ordered refunded to plaintiff, presents one question only. Was it entitled to interest on the sum directed to be refunded to plaintiff?

It is urged that this court has decided that the owner of land condemned is entitled to interest on his award by the

commissioners and that the rule ought to work both ways. But this is a misapprehension.   We held that when the money was paid into court and the railroad proceeded to take possession of the land and build its road, the owner was entitled to take down the money and for that reason was not entitled to·interest.   We did hold in Lewright v. Railroad, 113 Mo. 660, that the judgment obtained on the trial anew in the circuit court bore six per cent interest, like all other judgments, but that is a different proposition from the one now urged by plaintiff, to-wit, that it is entitled to interest on the excess of the award over and above the amount finally awarded to defendant from the time defendant took down the money.

Interest in this State is allowed by statute.   No statute allows interest under circumstances like those presented here. The land of defendant was seized *in invitum*.   The law required the money to be put up for its protection while its land was put in possession of plaintiff.

Extraordinary power was conferred on plaintiff, and while it has been compelled to be out of the use of its money pending the settlement of the amount it should pay, it is simply the price which the statute requires and no default is traceable to defendant.   There never was a time when it was in default until the final judgment was rendered requiring it to refund and then plaintiff appealed.   We are clear that plaintiff is not entitled to interest as claimed and the judgment must be affirmed on that branch of the case also, and it is so ordered.   All concur.