ARK. STATE HWY. COMM. *v.* RICH.

5-2826                                    362 S. W. 2d 429

Opinion delivered December 10, 1962.

*Dowell Anders* and *Barrett, Wheatley, Smith & Deacon,* for appellant.

*Spears & Sloan* and *Hale & Fogleman,* for appellee.

GEORGE ROSE SMITH, J. This is a condemnation proceeding in which the State Highway Commission was compelled to deposit in court a great deal more money than the jury later found the land to have been worth. The landowners had the use of the excessive deposit for more than two years. This appeal is from a judgment holding that the landowners are not liable to the State for interest during the time they had the use of the State's money.

The facts are simple. On August 18, 1958, the Highway Commission brought suit to condemn 50.454 acres of the appellees' land, filed a declaration of taking, and paid into court the sum of $69,500 as estimated compensation and damages. On motion of the landowners the circuit court, after a hearing, directed that the deposit be increased to $544,000. The commission complied with the order on January 1, 1959, and on the following day the landowners were allowed to withdraw the entire sum of $544,000. The case was not tried on its merits until July 10, 1961, when the jury fixed the award to the landowners at $325,000.

In entering judgment upon the verdict the court charged the State with interest in the total sum of $7,-858.25. This amount was arrived at by adding two items: (a) Interest at 6 per cent upon the entire $325,000 valuation from the date of the commission's entry upon the land (which was about a month before suit was filed) until the date of the commission's deposit of $69,500 in court, and (b) interest at 6 per cent upon the value of the land less the $69,500 deposited, computed from the date of the first deposit until the date on which the landowners withdrew the whole $544,000.

On the other hand, as we have said, no interest charge was made against the landowners for their use of $219,-000 of public funds (the excess of the withdrawal over the value of the land) for a period of some thirty-one months. At the rate of 6 per cent per annum the use of the State's money was worth more than $32,000 to the landowners.

In seeking to defend the inequality that is inherent in the trial court's judgment the appellees make two principal arguments.

First, it is pointed out that the State is liable for the payment of interest in any event, because an award of interest is required by the constitutional guaranty of just compensation when there is a delay between the time of the taking and the time of the payment for the property. *Ark. State Highway Comm.* v. *Stupenti,* 222 Ark. 9, 257 S. W. 2d 37. In fact, the statute under which the action at

bar was filed recognizes the State's liability for interest, Ark. Stats. 1947, § 76-536, but this clause was evidently inserted merely as a necessary introduction to the declaration that interest is not to be allowed to the landowner upon sums paid into court. We are unable to agree with the appellees in their attempt to interpret the legislature's casual reference to the State's undoubted duty to pay interest as a positive declaration that the landowner has no similar duty. To the contrary, the controlling section of the act, providing for judgment either for or against the State, makes no mention of interest in either case. Ark. Stats., § 76-537.

The landowners, unlike the State, are not under a constitutional compulsion to pay interest. Hence, the argument runs, they are exempt from liability under the rule that interest is not ordinarily payable upon an unliquidated demand, there being no default until the exact amount due has been determined.

In the circumstances before us this argument is not sound. The rule against paying interest upon an unliquidated demand is not inflexible. This point was discussed in *Loomis* v. *Loomis,* 221 Ark. 743, 255 S. W. 2d 671, where we said: ''Yet when the defendant is actually in default there are many instances in which interest is allowed even though the precise extent of his liability is not determined until the trial. For example, a defendant's liability for breach of a contract to pay a definite sum of money may be uncertain, for the default may have saved the plaintiff the expense of full performance on his own part, and that saving may be a matter for the jury to determine. In spite of this uncertainty interest is recoverable from the date of the breach.''

An analogous situation was considered in *City of Ft. Smith* v. *Southwestern Bell Tel. Co.,* 220 Ark. 70, 247 S. W. 2d 474, where the telephone company, after having put into effect a rate increase later found to have been excessive, was required to pay interest from the date of each overcharge **rather than from the date when the exact extent of the excess was determined. We reasoned that**

"the utility should not have the benefit of the free use of the subscribers' money, when such use came about through the utility's own effort."

In like manner these appellees ought not to have the free use of the State's money after having compelled its payment only by the assertion of a claim based upon an exaggerated idea of their losses. If the appellees' view of the law should prevail it would inevitably result in encouraging landowners to present exorbitant claims against the State in condemnation cases. (Counsel for the appellees quite properly make no particular point of the fact that in this instance the landowners' damages may have been reduced by a change in plan that the commission adopted after the amount of the additional deposit had been fixed by the court. It appears that the commission, before complying with the court's order, unsuccessfully sought to have the court reconsider the matter in the light of the new plan.)

Secondly, the appellees rely upon a number of decisions from other jurisdictions, holding that the landowner is not required to pay interest after having had the use of an excessive deposit in a condemnation proceeding.

All the cases cited are easily distinguishable, for in none of them did the landowner obtain the excessive deposit through his own efforts. For instance, in a representative case, *City of Atlanta* v. *Lunsford,* 105 Ga. App. 247, 124 S. E. 2d 493, the amount of the condemnor's deposit was fixed by three independent assessors. The court, in holding that the property owner was not bound to pay interest when the jury's valuation proved to be smaller than that of the assessors, pointed out that otherwise the condemnor would be able to force the landowner to accept an involuntary loan.

Here the transaction bears no resemblance to an involuntary loan, for the appellees took the initiative in the matter, demanding that the amount of the deposit be increased and adducing proof to sustain their claim. Upon these facts we cannot in good conscience hold that the appellees are entitled to profit by their own error. Yet

that would be the result if they were permitted to use almost a quarter of a million dollars of public funds, interest free, for more than two and a half years.

The judgment is reversed and the cause remanded for the entry of a judgment charging the appellees with interest at the rate of 6 per cent per annum in accordance with this opinion.

BOHLINGER, J., not participating.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice, dissenting. Article 2, § 22 of the Constitution of the State of Arkansas is as follows:

''The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor.''

Based on this provision of the Constitution, this court has held that advance payment is required as a condition precedent for taking land under an eminent domain proceeding. *Arkansas State Highway Commission* v. *Partain*, 192 Ark. 127, 90 S. W. 2d 968.

Following the opinion in the Partain case, *supra*, the legislature in 1953 enacted Act 115 which provided, *inter alia*, as follows:

''§ 76-536. Title vests upon making deposit. Immediately upon the making of the deposit provided for in section 5 (§ 76-538), title to the said lands in fee simple (or a conditional fee if mineral rights are sought to be preserved to the property owner) or such lesser estate or interest therein as is specified in said declaration, shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein and said judgment shall include as a part of the just compensation awarded, interest at the rate of six per cent (6%) per annum of the amount finally awarded as the value of the property, from the date of the surrender of possession to the date of pay-

ment, but interest shall not be allowed on so much thereof as may have been paid into court. No sum so paid into court shall be charged with commission or poundage.''[1]

This act contained no emergency clause and before the effective date thereof this court on April 20, 1953, delivered its opinion in the case of *Arkansas State Highway Commission* v. *Stupenti,* 222 Ark. 9, 257 S. W. 2d 37, wherein it was held that:

''Just compensation means full compensation. While the real loss to appellee might well be described as the denial of the use of his land for the time stated, yet the universally recognized rule for measuring this loss is by calculation of interest on the value of the land.''

The conflict between Act 115, *supra,* and the Stupenti case, *supra,* seems to be irreconcilable. The act provided ''interest shall not be allowed on so much thereof [amount of judgment] as may have been paid into court'', and the opinion in Stupenti provides, ''Just compensation means full compensation'' and in that opinion this court in determining that interest was due the landowner quoted from *Jacobs et al.* v. *U. S.,* 290 U. S. 13, 54 S. Ct. 26, 78 L. Ed. 142, as follows:

''The owner is not limited to the value of the property at the time of the taking; 'he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking'. Interest at a proper rate 'is a good measure by which to ascertain the amount so to be added'.''

and further in the Stupenti case this court, in rejecting the argument that interest, if any, should run only from the date of entry (May 5, 1950) to the date when appellant made its deposit into the registry of the court, said, ''This, of course, would result in no interest at all since the deposit was made March 27, 1950. In all events the proper date from which interest should be computed is the date of entry.'' It is apparent therefore that this court

---

[1] It must be noted that the Act clearly states the liability of the Highway Commission for interest on an excess of recovery over deposit, but pointedly omits any provision for interest from the landowner.

has determined that a property owner is entitled to interest from the date of entry as a part of his just compensation regardless of whether the proper amount has been placed in the registry of the court, and that such deposit does not relieve the condemnor from payment of such interest since the interest payment is not considered interest as such but a part of the land owner's just compensation.

In the case at bar we have a landowner who felt that the $69,500 deposit made by the condemnor was grossly inadequate and in proper manner petitioned that the state be required to increase its deposit. After a hearing on the petition, the trial court in its sound discretion found that the deposit should be increased to $544,000. After this increase was ordered the Highway Commission changed its plans for the construction of the proposed highway, providing for additional access to the balance of appellees' property, thereby diminishing materially the prospective damage to the balance of appellees' property. The trial court, avoiding a multiplicity of suits, again in its sound discretion, refused to allow the Highway Commission to reopen the case for the purpose of showing the changes in plans which would have diminished the prospective damage and no doubt would have justified a smaller deposit. Certainly it cannot be said that the trial court abused its discretion in refusing to reopen the case. If this were not so, then there would be no end to the litigation which would result from every change the Highway Commission might decide to make following a judicial determination of the amount of a deposit.

Upon trial of the case, based on the changed plans, a jury found appellees' damages to be $325,000, which amount, even after the plans were changed, is a far cry from the $69,500 the Highway Commission originally placed in the registry of the court which was supposed to be its estimate of the damages which would have been sustained by the landowners. In fact, it is not denied that under the terms of Act 115, the action of the landowner in petitioning for an increased deposit saved the State $38,131.75 in interest alone, not counting the windfall of

$32,000 additional this court is allowing the State by the majority opinion. If the amount of interest due the landowner could be calculated under the plain language of the Stupenti case, *supra,* then the saving to the State caused by this landowner's petition would be almost twice the $38,131.75 saved under Act 115. Yet the majority opinion says, "If the appellees' view of the law should prevail it would inevitably result in encouraging landowners to present exhorbitant claims against the State in condemnation cases." To the contrary, it appears to me that the healthy result would be to cause the State to make a deposit which more nearly represents the true value of the damage which might be sustained by the landowner who is being compelled to sell his land to the State against his will[2] Particularly is this true if it can be said that the portion of Act 115 which prohibits payment of interest on amounts deposited in court is constitutional.

The majority does not cite one single condemnation case to support its conclusion, but instead dismisses the excellent cases cited by appellees with the remark that they are distinguishable, "for in none of them did the landowner obtain the excessive deposit through his own efforts". In my view this is a distinction without a difference, since the principle in all of these cases remain the same. Uniquely under our law the trial court is permitted to order an increase in the amount of a deposit if it can be shown that the amount deposited is inadequate. This is not an *ex parte* proceeding whereby the landowner is the only party heard, but instead the State has the right to be heard and offer evidence of the correctness of the amount of the deposit. After a full hearing the trial court, in the case at bar, correctly determined from the evidence that the deposit was grossly inadequate and should be increased. Now this court by the majority view is saying that the landowner should be penalized because the trial court failed to determine exactly the amount of damages a jury would assess, and as above set out, the final trial was held on a set of facts which did not obtain at the

---

[2] A fair offer would tend to minimize the necessity of litigation, a policy of law which is universally applied.

hearing on the motion to increase, due to the change in plans made by the Highway Commission. Suppose the trial court had granted the condemnor's motion to reopen the case and offer evidence of its change of plans and after a full hearing determined that the amount of the deposit should have been reduced. Would not the majority view require that the landowner pay interest on the excess for the period of time such excess had been deposited? To ask the question is to answer it. Under our system the landowner had no more control over whether the Highway Department would change its plans than he had over the amount the trial court found to be an adequate deposit. Nor does the landowner have any control over the amount the condemnor chooses to voluntarily deposit. Would not the majority view also apply to a situation whereby the condemnor on its own volition deposited an amount in excess of the ultimate judgment?

The majority in rejecting the logic of the Georgia Court of Appeals in *City of Atlanta* v. *Lunsford*, 105 Ga. App. 247, 124 S. E. 2d 493, chose to discuss only the involuntary loan aspect of the court's reasoning. This is not the strongest case cited by appellees. See *New York Elevated Railroad Co.* v. *Story*, 8 N. Y. State Reports 431, 44 Hun. 177; *St. Louis K. & NWR Company* v. *Knapp, Stout & Co.*, (Mo.), 61 S. W. 300; *Kelly et al.* v. *Okla. Turnpike Auth.*, 269 P. 2d 359; *Maddox* v. *Gulf, Colo. & S. F. Ry. Co.*, (Tex.), 293 S. W. 2d 499. In fact it is the only case cited in which the proposition of an involuntary loan is discussed and to say the least, I agree with the court's logic in its entirety.

The Georgia statute is not identical with ours but in my view it cannot be distinguished in meaning and effect. I quote at length from the Lunsford case, *supra,* as follows:

"No mention of interest is made in Code Section 36-603, which is the section applicable here. It simply provides that, in the event the final judgment fixing the amount to be paid for the land taken is less than the amount of the award of the assessors, the condemnee shall be bound to refund any excess paid to or received by him.

"The law allows interest only because of a contract, express or implied, for its payment, or as damages for the detention of money, or for breach of some contract, or the violation of some duty. It is very generally stated that interest, being of purely statutory origin and not the creature of the common law, shall not be awarded except in such cases as fall within the terms of the statute, unless it has been contracted for either expressly or impliedly. In other words, there is no absolute right, independent of contract, express or implied, or of statute, to interest. *Best* v. *Maddox,* 185 Ga. 78, 194 S. E. 578; Accord, *Irons* v. *Harrison,* 185 Ga. 244 (8), 194 S. E. 749; *Gormley* v. *Eison,* 189 Ga. 259, 5 S. E. 2d 643. This principle has been applied specifically to a condemnation proceeding such as we here deal with. *St. Louis K. & N.W.R. Co.* v. *Knapp, Stout & Co.,* 160 Mo. 396, 61 S. W. 300.

"Certainly there is no express contract on the part of the condemnee to pay interest on any amount, nor do we find any basis for holding that there is any implied contract on his part to do so. The amount of the assessors' award is required to be paid by the condemnor, and it is made available to the condemnee from the time of such payment under the provisions of Art. I, Sec. III, Para. I of the Constitution of 1945 (Code Anno. Sec. II-301) which provides that just compensation must be 'first paid.' *State Highway Department* v. *Hendrix,* 215 Ga. 821, 113 S. E. 2d 761. The condemnation proceeding is, as to the condemnee, involuntary. If the amount of the award was not made available to the condemnee before the taking of his land, it would result in his being deprived of the use of his land and the money which the assessors have determined to represent just compensation therefor until a final judgment could be obtained. Often there is considerable delay between the time of the assessors' award and the trial before a jury. At any time the condemnee takes his money down, it is only natural that he has hope that the amount of the jury verdict will be equal to or in excess of the amount of the assessors' award. Neither the condemnor, the condemnee, nor the court can know what the result may be, thus none can know until final judgment the

amount that must finally be paid and accepted as just compensation. Condemnee is not and cannot be bound to refund any amount until final judgment. Thus it would strain credulity to say that there is any contractual obligation on his part to pay any amount until that time. Interest does not begin to run on an obligation until it is due and payable, in the absence of some contractual or statutory provision to the contrary. Approval of the contention of the city that interest should run on the excess from the time of payment of the award into the registry of the court, or even from the time of the withdrawal thereof, by the condemnee, would amount to holding that the city was authorized to require the condemnee to accept an involuntary loan, amount of which was indefinite and not determinable until some future date when a final judgment might be obtained, and at 'lawful interest' or 7 percent per annum, a rate over which the condemnee could have no control.

"Interest *eo nomine* can only be recovered from the date when the amount of the claim has been liquidated and determined. *Insurance Company of North America* v. *Folds,* 42 Ga. App. 306, 155 S. E. 782, and see 29 C. J. S. Eminent Domain, Sec. 333, page 1386.

"It is urged that, since the General Assembly has provided for the payment of interest by the condemnee on such excess amount in a special master proceedings (Ga. L. 1957, page 387, 396, Code Anno. Section 36-615a), a public policy has been adopted which we should apply uniformly both here and in the 'Three Assessor' type of proceedings. We do not agree. Each type of proceeding is statutory, and each must be had, governed, and determined by the terms of its respective statute. Further, provision for payment of interest by the condemnee on the excess or the difference between the amount of a special master's award and the amount of the final judgment has not yet been tested as to its constitutionality. There is room, we think, for grave doubt that the provision will stand a constitutional test.

"Counsel for the city urged that, since it has been held, in *State Highway Board of Georgia* v. *Warthen*, 54 Ga. App. 759, 189 S. E. 76; *Gate City Terminal Company* v. *Thrower*, 136 Ga. 456, 71 S. E. 903; *Central Georgia Power Company* v. *Stone*, 142 Ga. 662, 83 S. E. 524, that when the amount of the award has been increased by the final judgment the condemnee is entitled to interest on the amount of the increase from the time of the taking of the property, it would be unfair to hold that the city is not likewise entitled to interest on the excess when the amount of the award has been decreased. Again, we do not agree. The interest to which the condemnee is entitled flows from the constitutional guaranty of his just compensation to the condemnee for his property. *Seaboard Airline R. R. Co.* v. *United States*, 261 U. S. 299, 43 S. Ct. 354, 67 L. Ed. 664; *Brooks-Scanlon Corp.* v. *United States*, 265 U. S. 106, 44 S. Ct. 471, 68 L. Ed. 934; *Reed* v. *Chicago-Milw. & St. Paul R. R. Co.*, 25 F. 886.

"Of course, when the final judgment is obtained and the amount that condemnor is required to pay as just compensation is thus finally determined, if there is excess between the amount of the judgment and the assessors' award, both the amount thereof and the obligation to refund by the condemnee has become fixed. Thus it is proper for the court to provide, in this judgment as in other judgments, for the payment of interest thereon from the date of the judgment, and at the lawful rate of 7% per annum. Code Section 110-304 and 57-108. Judgment affirmed."

From what has been said and from 29 C. J. S., Eminent Domain, §333(b), page 1386, wherein it is said, "Where the award has been paid into court, and the amount finally awarded is less than that deposited, the condemnor is not entitled to interest on the balance; and this is so, it has been held, even though the money deposited was turned over to the landowner," I respectfully dissent to the majority opinion.