## JOHNSON *vs.* MOON, receiver.

1. Whether a widow who elects to take, in lieu of dower, an amount in money to belong to her absolutely, surrenders thereby all interest in the rents and profits of her deceased husband's realty as well as in the realty itself, is not now for decision.
2. Where the mode adopted by decree, of ascertaining the amount of money which the widow is to have absolutely in lieu of dower, is by computing according to life and annuity tables the value for her life of one-third of the preceeds realized by a sale of the husband's realty, the amount thus arrived at is not to be augmented by the addition of interest thereon from the husband's death or from any other period, if the decree is silent as to interest.
3. Whilst the widow's share of the fund is held by the court in the hands of its receiver, or is being brought in by the receiver, it bears no interest unless it makes interest. If the receiver is derelict in not paying out money when he ought, he is personally chargeable with interest for withholding it, but not otherwise.

December 14, 1888.

Equity. Decrees. Dower. Interest. Receivers. Before Judge FAIN. Bartow superior court. January adjourned term, 1888.

Reported in the decision.

R. B. TRIPPE and A. S. JOHNSON, for plaintiff.

W. K. MOORE, for defendant.

BLECKLEY, Chief Justice.

In a cause in equity touching the estate of Abda Johnson, deceased, being a bill filed by the widow as executrix to marshal assets, a report was made by a

special master, declaring the widow's right to dower, and declaring that under the special circumstances, she should be allowed a sum of money in lieu of dower; also recommending that a receiver be appointed to take charge of all the realty, sell the same and pay to her in lieu of dower a sum of money out of each parcel sold, the value of such parcel to be evidenced by the price brought, and the value of her life estate to be ascertained and determined by using the Carlisle mortuary table and the annuity table on page 847 of 70 *Ga. Reports.* The report further provided that a certain sum found due from her to the estate should be credited on her allowance for dower as sales were made, and if ultimately a balance remained against her, that a decree against her for the same be rendered; but if the balance were in her favor, that it be a first lien on the proceeds of the sales, and be paid to her as fast as sales were made. This report was confirmed, but what else, if anything, the decree of confirmation contained does not appear, no copy of the decree being in the record.

The first sale made by the receiver produced a sum of which her share was more than sufficient to cancel her debt to the estate. The excess was paid to her, together with some interest thereon, by order of the court. Another sale was made by the receiver on the first Tuesday in March, 1888, the terms being half cash and half on credit till the first of November thereafter, without interest. On March 26th, the widow obtained a rule *nisi* against the receiver, which, as subsequently amended, required him to show cause why he should not pay over her share of the fund produced by the second sale, together with interest upon her whole allowance out of both sales, from the death of her husband, July 10th, 1881, so long as the whole had been withheld from her, and upon the part still unpaid, to the present time, less the sum which she had already received for interest; the

theory of her claim being that her allowance in money in lieu of dower, made by the master's report and the decree thereon, bears interest until paid, computed from the date of her husband's death.

The decision of the chancellor upon the rule, as to principal, is not complained of, but it is complained that he allowed no interest further back than the time when the widow gave up the dwelling-house, which was in January, 1886, the same month in which the decree was rendered, and that from what interest accrued afterwards, he deducted all the interest that had been paid under his previous order, which order had never been vacated or excepted to.

1. Incidental to dower is the right to take the profits of the dower lands in the interval between the death of the husband and the assignment of the dower. *Austell vs. Swann*, 74 *Ga.* 278. Whether, in case no specific land is ever assigned her, the widow may claim any of the income derived from the realty of which her husband died seized, has not been decided in this State. In England her right to do so under some circumstances has been recognized, and equity has decreed an accounting in favor of her representatives after her death. *Curtis vs. Curtis*, 2 Bro. C. C. 620. And in South Carolina, after a statutory sale of the realty because it could not be divided, and the allowance to the widow, according to the statute, of a share in the proceeds, she has been held entitled to an account on principles of general equity. *Woodward vs. Woodward*, 2 Rich. Eq. R. 28. Our law (code, §§1770, 1771) offers to widows conditionally a choice between two substitutes for dower in kind, the condition as to each being that the representative of the estate assents, and as to one that the approval of the ordinary be also obtained. The first substitute is, the income during her life of one-third of the proceeds of

the sale of all the realty, such one-third to be invested by the representative under the direction of the ordinary ; the second is, the absolute ownership forever of a portion of such proceeds of sale, the amount to be determined by commissioners. Whether the election to accept either of these substitutes in lieu of dower is attended with a surrender of all right to, or interest in, the mesne profits of the husband's realty from his death up to the time of sale, is an open question. The question was not directly involved in *Smith vs. Smith,* 39 *Ga.* 226, though the decision in that case may be thought to throw a sort of side light upon it by analogy. Nor does the present case call for any adjudication touching rents and profits, the claim being not for any share in these but only for interest, *eo nomine,* upon so much of the proceeds of the sale of the husband's land as were apportioned to the widow by decree made in pursuance of the report of the special master. So far as appears, no right of Mrs. Johnson to share in rents and profits has ever been examined or adjudicated. She could not have any money paid to her out of the proceeds of the property of the estate on account of rents and profits, without having brought some sort of an action to recover her interest in such rents and profits, and having a judgment or decree rendered fixing the amount. This, so far as we are informed, has never been done. It is manifest that a chancellor cannot order a payment made out of a fund in the receiver's hands, without something on which to base the order. There has been no recovery by Mrs. Johnson of any rents and profits ; therefore nothing can be paid her at present on that account. Indeed, the master's report indicates that there was a full settlement with her ; because he found a sum of money against her, and directed that in the event the amount produced for her in lieu of dower by the sale of the lands

was insufficient to pay her debt, a decree be entered against her for the balance.   This was a bill to marshal assets, and of course one purpose of it was to ascertain who were claimants, and what were the claims against the estate; and if she had a claim for an interest in the rents and profits of the realty up to the time the master acted, that ought to have been presented and audited with the rest of the liabilities.   We see nothing here to indicate that anything of the sort was done.

2. There could be no computation of interest for time which elapsed prior to the date of the decree, unless the decree provides for interest.   If it be silent as to interest, it would have to be treated like any other judgment that is silent as to antecedent interest; there can be no allowance of interest as having accrued upon a judgment before its rendition.   This must be plain to any one who will stop to think of it.

3. Upon the question whether Mrs. Johnson is entitled to interest after the decree, we think there can be no allowance of interest upon a fund in the hands of the court by its receiver, or upon one which the receiver is engaged in bringing in, unless the fund produces interest.   If the specific fund to which Mrs. Johnson was entitled produced any interest, she is entitled to it; but if it did not, this being a bill to marshal assets (and therefore we are to suppose the estate insolvent), what is there to pay interest out of?   If the fund has been barren while in the hands of the court by its receiver, what is there to supply the means of paying interest?   Surely the balance of the general fund is not to be diminished by paying therefrom interest to any of the claimants.   Those who are to share in an unproductive fund when distributed, are not chargeable with interest payable out of the principal.

As we understand, this application does not go upon the theory that the receiver was in default in not pay-

ing over this fund promptly. Upon that theory, his liability personally would depend upon whether he was derelict in withholding the fund beyond the time he ought. He might be liable for interest although he made none, but it would only be in case he held the fund longer than he ought and failed to pay it out to the owner. We see nothing in this case, however, to indicate that the receiver personally was to be charged with what the court allowed as interest; but it seems to be an allowance out of the fund. We think that instead of the widow getting less by the action of the chancellor than she was entitled to, so far as appears from this record, she got more. The order for paying interest to her formerly granted was no obstacle to deducting the amount then paid from what the court thought would be now due but for that payment. The former order was not a recovery, but an interlocutory order in part execution of the decree. All the orders passed from time to time in the course of administering a fund in court until some final result is reached in disposing of it, are interlocutory in their nature, so far at least as to be subject to correction if to abide by them would result in overpayment. As long as the court has possession of the money with which to correct errors and mistakes, it is never too late to strike the ultimate balance which is legally due upon a decree which it has rendered.

Judgment affirmed.