105　191
108　777

BALLARD *v.* ORR *et al.,* executors.

A deputy-clerk of the superior court, appointed under section 4359 of the Civil Code, who has duly qualified, is empowered by law to attest deeds and other written instruments for registration; and the court committed no error in admitting in evidence a registered mortgage, attested by such officer, over an objection based on the invalidity of such attestation.

Submitted April 26, — Decided July 25, 1898.

Levy and claim. Before Judge Hart. Morgan superior court. January 19, 1898. ·

Heyser executed to Baccus a mortgage on land, dated March 18, 1884, and recorded two days later. The land was conveyed by Heyser to Houk by deed dated December 15, 1886, and re-corded December 16, 1886. Houk died intestate in 1890, in possession of the land, and it was set apart by the court of ordinary to his widow (the claimant) as a year's support. Baccus died in 1884, leaving à will in which, after giving certain legacies, he gave the residue of his property, including all choses in action, to John and W. J. Orr, and appointed them his executors. They qualified, and in 1894 foreclosed the mortgage. To the levy of the execution the present claim was interposed. At the time the mortgage was executed the mortgagor was clerk of the superior court of the county in which the land was situated. The deputy-clerk of the same court was one of the two attesting witnesses to the mortgage, attested it in his official capacity as deputy-clerk, and recorded it as such. It was admitted to record without probate by either of the attesting witnesses. The claimant testified that Houk bought the land from Heyser in December, 1883, or January, 1884. A house was then on it, and early in 1884 he moved his mother into the house, and during that year cultivated part, if not all, of the lot. In 1886 he finished paying for it, and the deed was thereupon made to him. After he took possession he built a dwelling, a cotton-house and a barn upon the land, and dug a well in it. Both John and W. J. Orr knew that Houk was in possession of the land, that he was improving it, and that he had bought it from Heyser. John Orr sold him some of the lumber he used

on the place. Neither of them warned him about the mortgage. Claimant lives on the place now. She did not hear of the mortgage until it was foreclosed. Another witness testified in part to the same effect. John Orr testified, that no agreement was made by him that the mortgage should be released on the payment to him, as executor, of the purchase-money to be paid by Houk, and he does not know where Heyser got the money which was credited on the mortgage indebtedness. He heard that Houk had bought the place from Heyser, and was in possession of it, but knew that the mortgage was recorded, and supposed that Houk knew of the mortgage at the time he took the deed. Knew that Houk had put some improvements upon the land; sold him some lumber, but does not know that he put it on the place. W. J. Orr testified, that he never knew that Houk had bought the land from Heyser, or that he had it in his possession and was improving it.

The property was found subject to the execution. The claimant's motion for a new trial was overruled, and she excepted. The motion alleges, that the verdict was contrary to law and the evidence, and that the court erred: (1) In admitting in evidence the mortgage from Heyser to Baccus, claimant objecting, that it had been illegally executed and admitted to record, because of the facts already stated in reference thereto. (2) In charging the jury, that the mortgage was properly executed and admitted to record, and was notice to the world, notwithstanding the mortgagor was the clerk of the superior court and the attesting witness was his deputy-clerk, and attested the mortgage in that capacity. (3) In rejecting from evidence, when offered by claimant, the following mortgages covering the land in dispute: from Houk to Butler, executed Dec. 15, 1886, recorded the same day; from Houk to Crawford, executed Nov. 30, 1887, recorded the same day; from Houk to Butler, executed Jan. 16, 1888, recorded Jan. 18, 1888; and from Houk to Markham, executed Feb. 15, 1889, Nov. 8, 1889, and Dec. 12, 1890; the purpose being to show acts of ownership on the part of Houk. (4) In omitting to charge the jury, though not so requested, that if Houk bought and paid for the land levied upon, went into possession under said purchase, and improved the property

and used it as his own, without actual notice to the mortgagee, and the plaintiffs in fi. fa. knew of these facts and stood by and permitted him to buy and improve the land without warning him of the mortgage which they had against the land, then they would at this late day be estopped from setting up the lien of the mortgage on said land.

*George & George,* for plaintiff in error.
*W. R. Mustin,* contra.

LITTLE, J. The questions of fact which arose in the case were properly submitted to and passed upon by the jury, and, after considering the grounds, we find that the trial judge committed no error in overruling the motion for a new trial. It is not necessary that the questions so raised should be referred to in detail here, further than to say that, it being admitted that at the date of the mortgage from Heyser to Baccus title to the land in dispute was in Heyser, and it appearing that the proceedings of foreclosure were regular, the burden was on the claimant to show a title or right superior to the mortgage, provided the latter created a valid and subsisting lien on the land. To defeat this lien, it was not sufficient to show that there had been a contract for the purchase of the land by Houk prior to the date of the mortgage, without showing knowledge or notice of such contract on the part of the mortgagee. It was not attempted to show that the mortgagee had actual notice or knowledge of that contract; nor does the evidence clearly show at what time Houk went into possession under the contract with Heyser, so as to charge the mortgagee with notice of his claim. We are not, therefore, able to say that the verdict of the jury was contrary to law and the evidence in the case. The main point in the case and the one upon which it turns under the pleading and evidence, as shown in the record, is whether the mortgage made by Heyser to Baccus, and which was recorded, constituted a valid lien on the land. The plaintiff in error insists that the instrument created no lien, because at the time of its execution Heyser was clerk of the superior court of Morgan county, and that it was attested by another witness and Baldwin, deputy-clerk of the superior court of Morgan county, and it was upon this at-

testation that the instrument was admitted to record by the deputy-clerk, without any further probate than that made by the attesting witnesses.    The contention is, that a deputy-clerk can not legally attest and admit to record a mortgage executed by a person who was at the time the clerk, and therefore the principal of the deputy.    The court overruled the objection made to the admission in evidence of the mortgage so executed, and charged the jury that the same was properly executed and properly admitted to record and was notice to the world, notwithstanding the fact that the mortgagor was, at the time of the execution of the mortgage, the clerk of Morgan superior court, and one of the attesting witnesses was a deputy-clerk of the same court and attested the mortgage in that capacity.    So that the question is clearly presented whether, under the laws of this State, a deputy-clerk of the superior court is authorized by law to officially attest the execution of a mortgage so as to entitle it to record.    While Heyser, at the time of the execution of the mortgage, was the clerk of the superior court, the execution of a mortgage by him was of course his personal act—that of an individual, with which his office was in no way connected.    If Baldwin, as a deputy-clerk of the court, was an officer authorized by virtue of his office to attest the execution of a mortgage, such attestation would be as good when made to the act of Heyser individually as to the act of any other individual.

By section 3620 of the Civil Code it is provided, that to authorize the record of a deed, "if executed in this State, it must be attested by a judge of a court of record of this State, or a justice of the peace, or notary public, or clerk of the superior court, in the county in which the three last-mentioned officers respectively hold their appointments, or if subsequent to its execution the deed is acknowledged in the presence of either of the named officers, that fact, certified on the deed by such officer, shall entitle it to be recorded."    Our system of attesting deeds and other instruments requiring record is the equivalent of an acknowledgment of the execution of such instruments, made by the maker as required by the common law and practiced in most of the States.    Under our statute, attestation by one of the officers named, together with another witness, dispenses with the neces-

.sity of acknowledgment, and acknowledgment in the presence of
a proper officer dispenses with the attestation of its execution
by an officer.    By section 4359 of the Civil Code, clerks of the
superior courts "have the power to appoint a deputy or depu-
ties, and may require from them bonds with good security, who
shall take the same oath as the clerks do before entering upon
the discharge of their duties, and whose powers and duties are
the same as long as the principal continues in office and not
longer, for the faithful performance of which they and their se-
curities are bound."    It is further provided by sections 259 and
260 of the Political Code that the bonds given by deputies must
be payable to their principals, for the same amount and with the
·same conditions for their conduct as deputies as are contained in
the bonds of the principal clerks, and these bonds must be re-
·corded in the same office and in the same manner as the bonds
of the principals; and also that it should be at the option of any
person who claims damage from the principal officer for the act
of his deputy, to sue the bond of the deputy instead of the bond
of the principal.    It is further provided by section 240 of the
Political Code, that all deputies, before proceeding to act, must
take the same oath as their principals take, which must be filed
in and entered on the minutes of the same office and with the
same indorsement thereon.    It must be noted, however, that
these provisions can not apply to an agent or representative or
any person who may be employed in particular matters only.
Such a person is not a deputy, in contemplation of the code.
It would thus seem that the provisions of our statute have gone
very far toward making the deputy-clerk, appointed under the
provisions of section 4359 of the Civil Code, a public officer.
In his work on Public Offices and Officers, Mr. Mechem says:
"Where a public officer is authorized to appoint a deputy, the
authority of that deputy, unless otherwise limited, is commen-
surate with that of the officer himself, and in the absence of any
.showing to the contrary, it will be so presumed"; citing 9 Iowa,
87; 6 T. B. Mon. 275; 7 J. J. Marsh. 444; 3 Littell, 316; 14
Ill. 254.    This author further says, such a deputy is himself a
public officer known and recognized as such by law.    Any act,
·therefore, which the officer himself might do, his general deputy

may do also; citing 9 Iowa, 87.   There is a decided conflict in
the reported cases on the question in whose name a deputy-officer
should act.   It seems now, however, to be well settled that
where the authority exercised by the deputy is manifestly a de-
rivative and subsidiary one, it is the authority conferred upon
the principal and not an authority inherent in the deputy.   It
follows in such cases that the authority must be exercised in the
name of him in whom it exists, and not in the name of him who
has no recognized authority.   But where the deputy is recog-
nized as an independent public officer and is endowed by law
with authority to do any act which his principal might do, the
authority exists in the deputy himself by operation of law, and
not being derived solely through the principal, it is well exe-
cuted in the name of the deputy.   1 Mich. 344; 26 Mich. 142.
So far as concerns the authority of a special deputy who is a
mere agent or servant of the principal, his acts can be properly
exercised only in the name of the principal.   78 Ill. 382.   As
already seen, the provisions of our statute in relation to the ap-
pointment of deputy-clerks by clerks of the superior courts are,
that the powers and duties of the deputy so appointed are the
same as those of the principal as long as such principal continues
in office.   In order, therefore, to determine the official powers
and define the official duties of a deputy-clerk appointed as pro-
vided, we are to ascertain only what are the powers and duties
of the principal clerk.   Section 4361 of the Civil Code pre-
scribes the duties which are required of the clerk of the superior
court, and by paragraph 16 of that section he is required "to
make a minute on all conveyances or liens of the day left for
record and the day recorded, to be signed officially, which shall
be evidence thereof, *and to attest deeds and other written instru-
ments for registration.*"   It will be observed that the power to
attest deeds and other written instruments for registration is
not an incidental power given to the clerk of the superior court
as an officer, but it is by this section made the official duty of the
clerk to make such attestation.   Being the official duty of the
clerk so to do, if the deputy-clerk is invested with the powers
and charged with the duties of the clerk, then it must follow
that to the deputy is given the power and it is made his duty to

make such attestation. A large number of cases are cited in 1 Devlin on Deeds, § 473, which support the rule that when an officer having power to take an acknowledgment (of a deed) is authorized to appoint a deputy, the deputy also has power to take and certify an acknowledgment. In the case of Miller v. Thatcher, 9 Texas, 482, it was ruled that a deputy had no power to take an acknowledgment; but in the case of Cook v. Knott, 28 Texas, 85, this ruling was reversed, and on objection that the deed offered in evidence was not duly registered because it had been authenticated for record and recorded by the deputy-clerk of the county court, the Texas court held that the deputy had authority to authenticate the deed for record. See also 20 Cal. 150; 82 Texas, 647; 29 Fla. 179.

The cases of *Goodwynne* v. *Goodwynne,* 11 *Ga.* 178, and *Graves* v. *Warner,* 26 *Ga.* 620, do not, as we understand them, conflict with our reasoning in this case. If they did, it would be sufficient to say that the provisions of our Code as they now exist on the subject, in more explicit terms, enlarge the authority given to deputy-clerks; and we are constrained to rule that, under these provisions, a deputy-clerk of the superior court appointed in the manner prescribed by the Code, who is given general authority by the appointment, and who has complied with the provisions of law in his qualification as deputy, has the same authority to officially attest the execution of deeds and other instruments requiring record and taking acknowledgments of the execution of such instruments as is given to the principal clerk, and that he has this power by virtue of his office as deputy-clerk; in the exercise of this power he uses his own name and authority and not those of the principal clerk; he may therefore attest a paper executed by the individual who is the principal clerk in the same manner and it will have the same effect as his attestation to papers executed by any other individual. And the court committed no error in admitting the mortgage in evidence and in charging the jury as set out in the motion.

*Judgment affirmed. All the Justices concurring.*