18921.   MOBLEY, superintendent, etc., *v.* GOODWYN.

DECIDED DECEMBER 14, 1928.

*Orville A. Park, C. N. Davie, J. F. Kemp,* for plaintiff.
*Boykin & Boykin,* for defendant.

BELL, J. The Bank of Roopville being in the possession of the superintendent of banks for liquidation under the act of August 16, 1919 (Ga. L. 1919, p. 135; Park's Code Supp. 1922, § 2263 (a) et seq.), and Mrs. H. J. Goodwyn being the owner of record of 20 shares of stock in the bank, an execution was issued against her on October 29, 1926, for the sum of $2000, in pursuance of an assessment of 100 per cent. upon the statutory liability of the stockholders. The execution, which was issued during the incumbency of the predecessor of the present superintendent, was signed "T. R. Bennett, Superintendent of Banks, by W. J. Davis, General Agent." The defendant filed an affidavit of illegality, upon which a directed verdict was returned in her favor. The superintendent made a motion for a new trial which the court overruled, and the movant excepted.

The grounds of the affidavit of illegality were as follows: (1) "That the said T. R. Bennett, as superintendent of banks, did not within 90 days after the said T. R. Bennett, as superintendent of banks, took charge of the Bank of Roopville, Roopville, Georgia, making [make] a careful estimate of the value of the cash assets of the said bank which could have probably been converted into cash within one year, after taking possession of the assets and the property of the bank, and the amount of cash assets which could be converted to cash to pay depositors, and immediately thereafter make assessment on this stockholder of said bank, as required by law." (2) "That the said T. R. Bennett, as superintendent of banks, did not within 30 days after the levy of assessment on this stockholder, and notice thereof, issue an execution." (3) "That the said execution levied was not made on a legal assessment made by the superintendent of banks, as required by law, nor was the said execution issued by the superintendent of Banks, as required by law, and for this reason is therefore void and a mere nullity, and should be cancelled." (4) "That the said execution being a mere

nullity and void and having been placed on the records of the clerk of the superior court of Carroll county, and on the general execution docket, should be cancelled."

The superintendent was not present at the trial, either in person or by representation, and made no traverse of the affidavit of illegality or other joinder of issue. In certain special grounds of the motion for a new trial, and in affidavits made to support the same, the superintendent sought to show that he did not even know that an affidavit of illegality had been filed and hence had no information that such a case was on the docket for trial; that had he been informed that the case would be tried, he would have traversed the grounds of the affidavit and would have shown that the same were not true. He further complained that for various reasons it was error to try the case at the time it was tried, and that, consequently, he was entitled to a new trial. Numerous affidavits were offered in rebuttal of the special grounds of the motion, and, without deciding that question, it would seem that an issue of fact was thus presented upon which the trial judge was authorized to deny and overrule these grounds of the motion. In the opinion which we entertain of the case upon the general grounds we deem it unnecessary to review and pass upon the special grounds.

Some question has been made in the briefs as to whether an assessment against the stockholders may be made by the superintendent through an agent, or must be made solely by the superintendent himself, but we think the affidavit of illegality can not be construed as raising any such question. As to this we will make further remark later on in this opinion.

■ Paragraph 1 of the affidavit of illegality is but a general denial that the superintendent complied with the provisions of section 20 of article 7 of the banking act (Ga. L. 1919, p. 135 et seq.). It is conceivable that the superintendent might fail in a number of particulars to comply with the provisions of this section. For instance, he might make an estimate of the value of the assets of the bank, but not make it within 90 days; or his estimate might not be a careful one. Again, he might make the required estimate within the time specified, and then fail to make an assessment against the stockholders on the basis thereof. Without further enumeration, there are perhaps other ways in which he might fall short of a compliance with the provisions of the section mentioned

above. Paragraph 1 of the affidavit of illegality contains no allegation to show wherein the superintendent failed to do the things required by that section, unless it could be construed as alleging, either that the estimate of the assets as made by him was not carefully made, or that such estimate and the subsequent assessment upon the stockholders were not made within the time specified in the act. Obviously it would not be sufficient merely to say that the estimate was not carefully made; and on the question of time, we do not think that the execution would be vitiated either because the estimate of values was not made within 90 days after the bank was taken possession of by the superintendent, or because the assessment upon the stockholders may not have followed immediately upon the making of such estimate or upon the expiration of such 90-days period.

It is our opinion that such provisions as to time are directory only, and that the superintendent's authority to issue an execution would not be lost merely because he may not have made the estimate and assessment within the precise time prescribed by law. *Spencer v. City of Columbus, 150 Ga. 312.*

■ Paragraph 2 of the affidavit of illegality alleges that the superintendent of banks did not, within 30 days after the levy of the assessment and notice thereof, issue an execution. The statute fails to prescribe any time within which the execution must be issued. It provides that notice of the assessment shall be given to each of the stockholders, by mail, and that if any stockholder shall refuse or neglect to pay the assessment within 30 days after the levy and notice thereof, the superintendent shall issue an execution against him. The effect of this provision is that the superintendent can not issue an execution until he has made an assessment and given to the stockholders 30-days notice of the same, so that upon this point the affidavit alleges a compliance with the statute rather than a non-compliance by the superintendent.

■ In paragraph 3 of the affidavit of illegality it is alleged that the execution "was not made on a legal assessment made by the superintendent of banks, as required by law." This is perhaps the allegation relied on by counsel for the defendant in error as raising the question whether the authority of the superintendent to levy the assessment upon the stockholders may be delegated to another as agent, or must be exercised by the superintendent himself. As in-

dicated at the outset, we can not agree that this or any other part of the affidavit was sufficient to raise any such question.

A fair and reasonable interpretation of the language quoted above is, not that the superintendent made no assessment whatever, nor that the assessment had been made by some other person, but the plain meaning of such allegation is that the assessment made by the superintendent was not a legal one. This was but to state a bare legal conclusion of the pleader, and was insufficient to raise any sort of question as to the validity of the execution.

In the same section of the banking act to which we have just referred (§ 20 of article 7, as amended by act of 1925 (Ga. L. 1925, p. 119, 131)), it is provided that where an affidavit of illegality is filed with the levying officer, he shall return the same, together with the execution, to the superior court of the county of the residence of the stockholder, to be there tried as other illegalities filed to executions issued on judgments rendered by such courts; and we are of the opinion that the same rules of pleading would apply to an affidavit of illegality provided for in the banking act as should be observed in other cases of affidavits of illegality.

In *Sharp* v. *Kennedy,* 50 *Ga.* 208 (2), it was held: "An affidavit of illegality to an execution setting up facts as a reason why the execution is proceeding illegally, must distinctly present the matter relied upon, so that, if not denied, the court may pass judgment intelligently, or if denied, that the jury may have distinctly before it the matter in issue." Again, in *Green* v. *Rogers,* 62 *Ga.* 166 (2), the Supreme Court said: "In an affidavit of illegality, the effect of which is to suspend the process of the court, the grounds should be set out in such manner as to show clearly that the execution is proceeding illegally by the conduct of the plaintiff or of the officers of the law; therefore, an allegation that the mortgage was altered, without stating who altered it or that it was done without the consent of the mortgagor, was properly held insufficient." See further, in this connection, *Baker* v. *Akerman,* 77 *Ga.* 89; *Terry* v. *Bank of Americus,* 77 *Ga.* 528 (2). The liability of stockholders of banks was created by law for the special benefit of depositors, and where an execution has been issued by the superintendent of banks which is fair and legal upon its face, the stockholder against whom it was issued should not be permitted to avoid such liability without pleading facts to show that the execution is

proceeding illegally against him. We repeat, the allegation that the execution "was not made on a legal assessment made by the superintendent of banks" does not amount to an averment that no assessment was made by that officer; otherwise, why the use of the descriptive term "legal" in referring to the assessment. On reading this language, the question which naturally occurs to mind is, why or wherein was the assessment not a legal one? And it would seem irrelevant to ask, why was an assessment not made, or if made, who instead of the superintendent made it?

We held in *Deariso* v. *Mobley*, 38 *Ga. App.* 314 (3) (143 S. E. 915), that the superintendent of banks may confer authority upon an agent to issue executions to enforce the statutory liability of the stockholders. But whether he may delegate to another as his agent the power to make assessments determining the amount for which executions should be issued is a materially different question, and one which we have not as yet been called upon to decide. See, in this connection, In re Giles, 21 Fed. (2d series) 536, Carmichael v. National Park Bank, 28 Fed. (2d series) 691. We will undertake to deal with that question when it is presented, but until that time we will continue to leave it open, as we should do with every question not made in the record. Any ruling that we might make upon any such question in the present case would be altogether beside the mark, because if we should undertake to adjudicate the same with the result even of deciding it in favor of the defendant in fi. fa., we would still be compelled to say that the question was not raised in the record, and our judgment would be the same notwithstanding such ruling.

It may be that the superintendent has heretofore in each case made the assessments in person, and that he will continue to do so in the future. If so and if in all cases of allegation to the contrary he should join issue and make proof of the facts (which to the writer would seem the wiser course), it might be that no question would ever arise as to whether he may delegate to another the power to make such assessments. Hence, we can see no reason for going into such question at this time.

■ Paragraph 3 of the affidavit of illegality further alleged that the execution was not issued by the superintendent of banks as required by law, and, as shown in the briefs of counsel for the defendant in error, this was intended as an attack upon the execu-

tion because it was issued and signed by the superintendent through an agent, and not directly in his own official capacity. Under our ruling in *Deariso* v. *Mobley,* supra, this averment also failed to state any sufficient ground of illegality.

Paragraph 4 of the affidavit appears to depend upon the preceding allegations, and not to have been intended as a statement of a separate or additional defense.

It follows, from what has been said, that the affidavit of illegality failed to show any reason why the execution was proceeding illegally, and thus that the uncontroverted allegations thereof, considered as evidence in behalf of the defendant, failed to prove any defense. Civil Code of 1910, § 5307; *McLeod* v. *Bird,* 14 *Ga. App.* 77 (80 S. E. 207); *Barton* v. *Watkins Co.,* 31 *Ga. App.* 301 (120 S. E. 643); *Bolton* v. *Keys,* 38 *Ga. App.* 503 (2) (144 S. E. 406). The verdict in favor of the defendant in fi. fa. being therefore without evidence to support it and contrary to law, the court erred in refusing a new trial.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*