McCASKILL *v.* CHATTAHOOCHEE FERTILIZER CO. *et al.*

No. 6425.   FEBRUARY 12, 1929.

*Bennet & Peacock, Ellis, Mitchell & Ellis,* and *Alston, Alston, Foster & Moise,* for plaintiff.

*Little, Powell, Smith & Goldstein,* for defendants.

HILL, J. (After stating the foregoing facts.) It appears from the petition that on September 3, 1924, the Chattahoochee Fertilizer Company had a debt against R. D. Smith, and that in order to secure the collection of the claim the Fertilizer Company accepted from Smith a sale and transfer of 23 shares of stock of the par value of $100 each in the Bank of Ty Ty, and that the transfer of the stock was duly entered on the books of the bank. The bank closed its doors, on what date the petition does not allege; but it does allege that the bank was insolvent on April 24, 1926, and was taken over by the superintendent of banks. It is also alleged that on May 14, 1926, the superintendent of banks legally assessed

against each of the stockholders of the bank the sum of $100 to the share of stock owned by such stockholder, for the payment of such debts of the bank as said assessment could be used for, and issued against the Fertilizer Company a fi. fa. for the amount of the assessment, a copy of which fi. fa. is attached to the petition. By reference to that copy it appears that said sum "has been levied and assessed upon the Chattahoochee Fertilizer Company and all other stockholders of the Bank of Ty Ty," etc. The fi. fa. is signed: "T. R. Bennett, Superintendent of Banks, By J. E. Cagle, Assistant Superintendent of Banks. Superintendent of Banks of the State of Georgia." In paragraph 8 of the petition it is alleged that "on the 14th day of May, 1926, said superintendent of banks duly and legally assessed against each of the stockholders of said bank the sum of $100 to the share of stock owned by such stockholder, for the payment of such debts of said bank as said assessment could be used for." And paragraph 9 alleges that "thereafter, on said Fertilizer Company having failed to pay said assessment, said superintendent of banks duly and legally issued against said Fertilizer Company a fi. fa. for the amount of said assessment," etc. The demurrer admits the above allegations. Under the act of 1919 (Ga. L. 1919, pp. 135, 141, sec. 10; Park's Code Supp. 1922, § 2263(j)), it is provided that "the superintendent of banks shall appoint from time to time, with the right to discharge at will, an assistant superintendent, who shall be ex-officio examiner, and such additional examiners and office assistants as he may need to discharge in a proper manner the duties imposed on him by law," etc. If, therefore, the State superintendent of banks has made the assessment against the stockholders of the bank, as we are bound to hold he has done, under the allegations of the petition, then the fact that the execution was issued by an assistant superintendent in the name of the superintendent of banks would not render the execution illegal or void. The main act of *assessment* was done by the State superintendent of banks himself, and the act of issuing the execution was done by the assistant superintendent as a ministerial or clerical act, which would not render the execution void. See, in this connection, *Ballard* v. *Orr*, 105 *Ga.* 191, 196 (31 S. E. 554); 22 R. C. L. 584, § 300. Whether, under the act of 1919, the assistant superintendent can make the assessment it is not necessary now to decide; for, as already stated, it is alleged that the assess-

ment was made by the State superintendent of banks as authorized by the State banking act. The question is, can the assistant State bank examiner sign an execution where the assessment has been made by the State superintendent of banks and the assessment has not been paid. It is provided in the act of 1914 (Ga. L. 1914, p. 71; Park's Code, § 2283), that "The assistant examiner shall possess the power and perform any duties attached by law to the office of the State bank examiner, under the direction of the State treasurer, or during a vacancy in the office, or during the absence or inability of the State bank examiner."

In *Commercial Bank* v. *Blassingame,* 147 *Ga.* 636 (2) (95 S. E. 222), this court held: "The ground of the demurrer raising the point in regard to the notice sent out to stockholders for a meeting to be held, that an assessment could only be levied where the notice is sent out by the State bank examiner, and that notice sent out by an assistant bank examiner would not be in compliance with the law and would be ineffective as legal notice under the statute, was without merit. See Civil Code, §§ 2282, 2283, relating to the appointment, powers, and duties of the assistant bank examiner." In *Simmons* v. *Freeman,* 146 *Ga.* 118 (3, 4) (90 S. E. 965), after quoting from the U. S. Rev. Stat. § 327 (Fed. Stat. Ann. 192), this court held: "The deputy comptroller of the currency being authorized by law to act for the comptroller in certain contingencies, the courts will presume, in the absence of any showing to the contrary, that the deputy, in acting for the comptroller in any particular instance, has acted lawfully. Young *v.* Wempe, 46 Fed. 354; Bolles' Nat. Bank Act Ann. 333; Cadle *v.* Baker, 20 Wall. 650 (22 L. ed. 448). A certificate signed by the deputy comptroller of the currency, as 'acting comptroller of the currency,' is a sufficient certificate by the comptroller of the currency within the requirements of the statute just cited. Keyser *v.* Hitz, 133 U. S. 138 (10 Sup. Ct. 290, 33 L. ed. 531)." Under the old law the liquidation of banks was through receivers appointed by the superior courts. But under the act of 1919, as amended by the act of 1925, the State superintendent of banks is a statutory receiver, and the liquidation of banks is entirely in his hands. It would be physically impossible for the superintendent of banks to discharge personally the duties required of him by personally looking after all the details incident to the liquidation of insolvent banks. The

legislature of the State evidently recognized this fact when it passed the State banking act, and provided for an assistant superintendent, examiners, and such other employees as might be necessary for the proper discharge of the many duties incumbent on the superintendent. The act provides (Ga. L. 1919, p. 135, § 10, art. 2), that "The superintendent of banks shall appoint from time to time, with the right to discharge at will, an assistant superintendent, who shall also be ex-officio an examiner, and such additional examiners and office assistants as he may need to discharge in a proper manner the duties imposed upon him by law, provided that such appointments shall not extend beyond the term of office of the superintendent of banks making such appointments." While the duties which are to be performed by the assistant superintendent are not specifically prescribed by the act, in art. 2, sec. 10, it is provided that "The assistant superintendent, examiners, and clerks shall perform such duties as shall be assigned to them, respectively, by the superintendent of banks." And in art. 7, sec. 9, of the banking act (Ga. L. 1919, p. 157), it is provided that "The superintendent may, under his hand and official seal, appoint an agent to assist him in taking possession of, liquidating, and distributing the assets of any bank under the provisions hereof, the certificate of appointment to be filed in the office of the superintendent, and a certified copy thereof delivered to such agent. . . The superintendent may authorize such agent to perform such duties connected with such liquidation and distribution as the superintendent himself could in person do and perform." In art. 7, sec. 10, it is also provided that the superintendent of banks "may employ such attorneys and procure such expert accountants and other experts, assistants, and employees as may be necessary in the liquidation and distribution of the assets of such bank, and may retain such of the officers or employees of such bank as he may deem necessary."

It therefore seems clear that the legislature, in passing the act of 1919, recognized the necessity of conferring on the superintendent of banks authority to appoint such assistants and help as might be necessary in the liquidation of insolvent banks, and it evidently recognized the fact that the superintendent of banks could not personally perform all the duties required under the act for the liquidation of banks, and hence conferred the authority on the superintendent to employ such assistants as might be necessary. Un-

der the act of 1919, art. 7, sec. 20 (Ga. L. 1919, p. 160), it is provided that "if any stockholder so notified shall refuse or neglect to pay any such assessment within thirty (30) days after the levy of such assessment and notice thereof, the superintendent of banks shall issue an execution against such stockholder for the amount of such assessment, which shall be enforced in like manner as executions issued by the superior court of this State upon judgments regularly rendered by said courts," etc. The various paragraphs of the act of 1919 bearing upon the same subject must be construed together. The language last quoted must be construed in connection with the other language quoted from the act of 1919, and so construed it is broad enough to authorize the superintendent of banks to delegate the authority to the assistant superintendent of banks to issue and sign executions against stockholders in insolvent banks turned over to the superintendent for purposes of liquidation. It would be practically a physical impossibility for the superintendent of banks, in addition to his other duties under the act, to issue and sign in person all the executions which have to be issued against the stockholders against whom assessments are made by him; and the legislature wisely provided that part of the work devolving upon the superintendent of banks in process of liquidation may be performed by assistants and employees appointed by the superintendent for that purpose. The mere signing of an execution is not a judicial act. It is a clerical or ministerial act, which can be delegated under the act. Making the assessments against the stockholders involves the exercise of discretion, and this duty is put expressly upon the superintendent. He must determine the amount and value of the assets and of the liabilities of the insolvent banks. He must investigate and estimate how much can be collected from the assets of the insolvent bank in liquidation within twelve months, and then levy an assessment against the stockholders, if the assets are less in value than the liabilities, and collect the difference between the estimated value of the two, in order to pay the depositors and creditors. After this is done by the superintendent, and he has notified the stockholders and they fail or refuse to pay the assessments within thirty days, there remains nothing else to be done except to issue an execution for a definite sum assessed by the super intendent against the stockholders who refuse or fail to pay the assessment. Properly construed, the act authorizing the superin-

810

tendent to issue the executions is merely clerical, requiring no exercise of discretion, and can be delegated by the superintendent to his assistant, who does not exercise any discretion in so doing, but acts merely in a clerical manner.  Under the foregoing provisions of the statute the superintendent of banks could delegate to the assistant superintendent any ministerial duties pertaining to his office.  His delegation may extend to authority to issue executions in the name of the superintendent.  A signature, "T. R. Bennett, Superintendent of Banks, by J. E. Cagle, Assistant Superintendent of Banks," attached to a paper purporting to be an execution based on an assessment made by the superintendent of banks against the stockholders of an insolvent bank, when properly construed, denotes action "by" the assistant, and the paper amounts in substance to an execution issued by the assistant in the name of the superintendent of banks, and is presumptively valid.  The authority of the assistant superintendent of banks, in relation to issuance of executions such as now under consideration, is derived from the provisions of the banking act of 1919, supra.  The cases of *Ballard* v. *Orr,* supra, *Biggers* v. *Winkles, 124 Ga.* 990 (53 S. E. 397), and other similar cases relating to officers deriving their authority under other provisions of law, have no application and are not controlling here.

It follows from all that has been said that the execution involved in this case, signed, "T. R. Bennett, Superintendent of Banks, by J. E. Cagle, Assistant Superintendent of Banks.  Superintendent of Banks of the State of Georgia," is not illegal and void as contended.  Carmichael *v.* National Park Bank, 28 Fed. (2d) 691 (C. C. A.) ; *Mobley* v. *Goodwyn, 39 Ga. App.* (146 S. E. 28) ; and see *Deariso* v. *Mobley, 38 Ga. App.* 313 (143 S. E. 915).  The case of *Mobley* v. *Marlin, 166 Ga.* 820 (144 S. E. 747), did not involve the question now under consideration, of the authority of the superintendent of banks to delegate his authority to issue executions.  That case involved the question of the validity of a sale of the assets of a bank.  And see 31 Cyc. § 1428(c).

■ After alleging the facts set out in the foregoing statement, the plaintiff prayed that the Chattahoochee Fertilizer Company, the International Agricultural Corporation, and their officers and agents be enjoined from transferring or otherwise changing the status of any of the assets, including choses in action, which are

or have been owned by the Chattahoochee Fertilizer Company, and that they be required to turn such assets over to a receiver to be appointed by the court. There was also a prayer for a receiver to take charge of the assets of the defendants and to handle the same to the best interests of the creditors of the Fertilizer Company, and reduce the same to cash; that any and all transfers made by the Chattahoochee Fertilizer Company to the International Agricultural Corporation of any of its assets be set aside and declared null and void as against the plaintiff and other creditors of the Fertilizer Company; and that the receiver be authorized to take such steps as may be necessary to accomplish this purpose. A further prayer was that by final decree the assets of the Fertilizer Company be applied to the payment of the debt of plaintiff and debts of other creditors, according to the priorities established by law. Under the allegations of the petition we are of the opinion that it sets out a cause of action, and that the court erred in dismissing the petition on demurrer.

*Judgment reversed. All the Justices concur, except Russell, C. J., who dissents.*