MACON GROCERY CO. *v.* MOBLEY, superintendent, *et al.*

No. 8490.   DECEMBER 18, 1931.   ADHERED TO ON REHEARING, MARCH 1, 1932.

*W. H. Harris,* for plaintiff.

*G. S. Walton* and *Park & Strozier,* for defendant.

BECK, P. J.   Macon Grocery Company brought a petition for mandamus against A. B. Mobley as superintendent of banks and as liquidator of the Citizens Bank of Fort Valley, and also against that bank, alleging that the said bank is a banking corporation operating its banking business in Fort Valley until November 27, 1928; that it is now insolvent and in process of liquidation by the State superintendent of banks, who took possession of the bank and all its assets on the date just stated; that at the time of closing the bank and taking possession thereof the superintendent of banks held for collection certain checks aggregating $1,004.71, belonging to petitioner, the checks having been drawn on banks outside of Fort Valley and left with the Citizens Bank for collection, but not having been collected when the bank closed, which checks the superintendent of banks collected after he took possession of the bank and its assets, receiving in cash the sum of $1,004.71; that petitioner had demanded this sum, and the demand had been refused; that petitioner duly filed with the superintendent of banks its claim as a preferred claim for the sum stated, which the superintendent recognized as a valid claim for that amount, but refused to recognize it as a preferred claim, notifying petitioner that the rank of its claim had been changed from the rank of a preferred claim to that of a depositor to the amount of $1,004.71.   On April 9, 1929, plaintiff filed its petition praying for a judgment establishing its claim for said sum as a preferred claim and entitled to priority of payment out of the assets of the

bank. The issue in said suit was finally decided in favor of plaintiff and plaintiff's claim as constituting a first lien on the assets of the bank and entitled to priority of payment, and the superintendent of banks paid the petitioner the sum of $1,004.71, paying the same specifically as principal of the above-stated claim established as a first lien on the assets of the bank, and with the agreement between the parties that the payment and receipt of the principal of the claim was without prejudice to the rights of petitioner to collect interest thereon. From December 1, 1928, to December 12, 1930, the said sum of $1,004.71 was held and used by said superintendent of banks in the liquidation of the bank; and petitioner insists that interest at the rate of 7 per cent. per annum on the sum stated, from December 1, 1928, before which time it came into possession of the superintendent of banks, to December 12, 1930, when said principal of said claim was paid to petitioner, amounts to $142.80; and petitioner prays for a mandamus requiring the defendants to pay over to petitioner the sum of $142.80, with interest thereon at 7 per cent. per annum since December 12, 1930.

A general demurrer to this petition was sustained, and the plaintiff excepted.

Section 3434 of the Civil Code provides that all liquidated demands bear interest. The plaintiff's claim was for a liquidated demand; and it is insisted that under the absolute provision of the statute it bears interest. But we do not think that the plaintiff's demand in this case falls within the general rule. In a sense it is an exception thereto; and there are other exceptions which might be mentioned. Plaintiff's demand falls rather under the general rule and generally recognized principle that there should be no allowance of interest upon the funds in the hands of a receiver, unless the funds produce interest. The defendant contends that when a debtor becomes insolvent and his affairs are placed in the hands of a receiver for liquidation, it is just to all his creditors, regardless of the rank of their claims, that the amounts of their debts shall be calculated as of the date of the suspension; that the object of an insolvency proceeding is liquidation; that, the debtor being insolvent, the amount of the estate not being equal to the amount of his debts, there is not a sufficiency of assets to pay all the creditors, and it would be unjust and in-

equitable to take from one creditor, who receives no interest, money to pay interest to another. We think that the principle thus asserted, the soundness of which was recognized by the trial court in sustaining the general demurrer, is applicable in this case. That principle in a general way has been ruled by this court. In *Johnson* v. *Moon*, 82 *Ga.* 247, 251 (10 S. E. 193), a widow brought her bill to marshal the assets of the insolvent estate of her husband. She had a decree for a sum of money in lieu of dower, and her claim was adjudicated to be superior to all other claims. She sought to collect interest on the amount due her from the date of the decree to the time of payment. The court held that interest was not allowable. In the decision rendered by Judge Bleckley the principle is thus stated: "Upon the question whether Mrs. Johnson is entitled to interest after the decree, we think there can be no allowance of interest upon a fund in the hands of the court by its receiver, or upon one which the receiver is engaged in bringing in, unless the fund produces interest. If the specific fund to which Mrs. Johnson was entitled produced any interest, she is entitled to it; but if it did not, this being a bill to marshal assets (and therefore we are to suppose the estate insolvent), what is there to pay interest out of? If the fund has been barren while in the hands of the court by its receiver, what is there to supply the means of paying interest? Surely the balance of the general fund is not to be diminished by paying therefrom interest to any of the claimants. Those who are to share in an unproductive fund when distributed are not chargeable with interest payable out of the principal. As we understand, this application does not go upon the theory that the receiver was in default in not paying over this fund promptly. Upon that theory, his liability personally would depend upon whether he was derelict in withholding the fund beyond the time he ought. He might be liable for interest although he made none, but it would only be in case he held the fund longer than he ought and failed to pay it out to the owner. We see nothing in this case, however, to indicate that the receiver personally was to be charged with what the court allowed as interest; but it seems to be an allowance out of the fund."

In principle that case is analogous to this. The bank was insolvent and was placed in defendant's hands for liquidation. The

superintendent of banks is a receiver—a statutory receiver. *McCaskill* v. *Challahoochee Fertilizer Co.*, 167 *Ga.* 802, 807 (146 S. E. 830). The ruling in *Johnson* v. *Moon,* supra, has been recognized and followed in other decisions rendered by this court. In *Lamar* v. *Taylor,* 141 *Ga.* 227 (80 S. E. 1085), it was said: "The rule as to not allowing interest in favor of one party entitled to share in an insufficient fund, to the detriment of another, seems to be recognized in *Johnson* v. *Moon,*" supra. In *Gaston* v. *Shunk Plow Co.,* 161 *Ga.* 287 (130 S. E. 580), this court said: "So there can be no allowance of interest on a fund in the hands of the court or its receiver, or that is being brought in by the receiver, unless the fund produces interest." We do not attempt here to set forth the facts in these cases. They can be read by those who are interested. There are outside decisions of high authority that also lay down a similar doctrine. White *v.* Knox, 111 U. S. 784 (4 Sup. Ct. 686, 28 L. ed. 603); Merrill *v.* National Bank, 173 U. S. 131 (19 Sup. Ct. 360, 43 L. ed. 640). In Butler *v.* Western German Bank, 159 Fed. 116 (86 C. C. A. 306), it was said: "The claim is for the funds or property converted or wrongfully withheld. It is not founded on the idea that the defendant owes to the complainant a debt; on the contrary, it is based on the fact that the conduct of the defendant has been such that the relation of debtor and creditor has not been created, as ordinarily occurs when a client makes a deposit with his banker. The equity, springing as it does from the right to trace the funds or property, does not extend to a right to take other funds or property by way of damage or interest. Especially is this true where it does not appear that the fund withheld has earned interest or profit. . . To allow interest in such case would be to permit the wrongful withholding of the fund by the defendant to create a charge on other funds held by him in trust for the creditors of the bank. This would be inequitable. The investigation and decision of this case has, it is true, established the fact that the receiver should have surrendered this fund to the complainant, but an error of judgment by the receiver on this question should not make the creditors of the bank chargeable with interest on the fund withheld." See also Merchants National Bank *v.* School District, 94 Fed. 705 (36 C. C. A. 432). The Court of Appeals of New York, in People *v.* American Loan & Trust Co., 172 N. Y.

371 (65 N. E. 200), thus stated the principle: "While interest is allowed as against the corporation itself, or its stockholders, if the assets are sufficient for the purpose, as between preferred and unpreferred creditors no interest is allowed after the law takes charge through the appointment of a receiver. . . He is appointed for the benefit of all the creditors, both preferred and unpreferred, and holds the assets, under the direction of the court, in trust primarily for them, and finally for the corporation and its stockholders. Thereupon, by operation of law, the creditors become the equitable owners of the assets, and the administration of affairs is for their benefit as such. The claims of creditors against the defunct corporation differ from their claims against its assets in sequestration, for they are not proved against the insolvent and dissolved nonentity, but against the fund in the receiver's hands. In the distribution of that fund the general rule applicable to insolvent estates, that equality is equity, should prevail so far as the statute, when reasonably construed, will permit." Numerous other cases are to be found, laying down the principle which we have recognized as sound. In view of what we have said, it follows that the judgment of the court below must be *Affirmed. All the Justices concur.*