GORMLEY, superintendent of banks, *v.* EISON *et al.*

No. 13066. OCTOBER 13, 1939. REHEARING DENIED NOVEMBER 17, 1939.

*Ellis G. Arnall, attorney-general,* and *Herschel E. Smith, as-. sistant attorney-general,* for plaintiff in error.

*C. N. Davie* and *Alex McLennan,* contra.

GRICE, Justice. 1. Petitioners base their right to prevail on the contention that the superintendent of banks, after having paid them the full amounts of their principal, is in duty bound to pay them interest on their general demand deposits. It was not alleged that the bank contracted to pay them interest, or that the fund in the hands of the superintendent of banks had produced interest. The bank in process of liquidation having paid all costs and expenses of liquidation, and having paid the principal amount of all claims of depositors and other creditors, and the superintendent of banks having in his possession cash and other assets of an appraised value of more than $8000, the petitioners assert that they and all others similarly situated are entitled to interest on their deposits from the date of the suspension of the bank. "The law allows interest only because of a contract, express or implied, for its payment, or as damages for the detention of money, or for breach of some contract, or the violation of some duty. It is very generally stated that interest, being of purely statutory origin and not the creature of the common law, should not be awarded except in such cases as fall within the terms of the statute, unless it has been contracted for either expressly or impliedly. In other words, there is no absolute right, independent of contract, express or implied, or of statute, to interest." *Besl* v. *Maddox,* 185 *Ga.* 78, 82-83 (194 S. E. 578). There is in our rather comprehensive banking law of 1919 (Ga. L. 1919, pp. 135 et seq.), and the act amendatory thereof (Ga. L. 1925, pp. 119 et seq.), codified as title 13 of our Code of 1933, §§ 13-101 et seq.), no provision in the liquidation of insolvent banks for the payment of interest. Section 24 of article 7 of the original act contains the sole reference to interest on deposits of an insolvent bank. It requires the superintendent of banks to deposit in a bank dividends and unclaimed deposits remaining in his hands unpaid for six months after the order for final distribution, the same to be in trust for the several depositors in, and creditors of, the liquidated bank;

"and the superintendent may pay over the money so held by him to the persons respectively entitled thereto, as and when satisfactory evidence of their right to the same is furnished." The section concludes with the following statement: "The interest earned on the monies so held by him shall be applied toward defraying the expenses incurred in the payment and distribution of such unclaimed deposits or dividends to the depositors and creditors entitled to receive the same. The balance of interest, if any, shall be deposited and held as other funds to the credit of the Department of Banking."

The language in the first part of the section, with reference to being held in trust for the several depositors in, and creditors of, the liquidated bank, does not refer to interest. It is the latter part of the section, quoted above, that deals with interest, and specific provision is there made for the application of interest so earned. There is no allegation in the petition as to where the sum of $8000, alleged now to be in the hands of the defendant, was derived from. If it was interest earned by the superintendent of banks, since the failure of the bank, on the dividends and unclaimed deposits remaining in his hands for six months after the final order of distribution, then by virtue of the very terms of the Code section the sum is not available for the payment of plaintiffs' claims, because the law applies it otherwise. By its terms, the act approved March 15, 1935, striking section 13-822 of the Code of 1933 (Ga. L. 1935, pp. 103-105), does not affect a bank which, as in this case, was taken over by the superintendent for liquidation pursuant to title 13 of the Code. If the $8000 represents money paid by the stockholders as assessments imposed upon them by the law in force at the time (Code, § 13-822), the plaintiffs are in no better position, because our banking law applicable to this case provides: "After all the indebtedness of such bank is paid in full, the remaining assets of such bank shall be applied first to reimbursing the stockholders who have paid such assessment or assessments, and thereafter pro rata to all the stockholders." We think the context shows that the word "indebtedness" as there used can not refer to interest, but only to the principal amounts of indebtedness. We are supported in this construction by the very wording of the first part of the section from which the language last quoted was taken (Code, § 13-822):

"Within 90 days after the superintendent of banks has taken possession of the assets and business of any bank, as in this title authorized, he shall make a careful estimate of the value of the cash assets of said bank which can probably be converted into cash within one year after so taking possession of the assets and business of said bank, and of the amount of such cash assets which will be available to pay depositors; and he shall immediately thereupon make an assessment upon the stockholders of said bank, sufficient, when added to the cash assets so available for depositors, to pay the said depositors in full." If within 90 days he is to make an assessment against the stockholders of an amount sufficient, when added to the cash assets available, to pay the depositors in full, he must at that time have before him the amount of the indebtedness to depositors. We all know that various delays occur in the liquidation of a bank. Lengthy litigation sometimes occurs; and if it were intended to include interest in the term "indebtedness," an uncertain quantity would enter, and his estimate would be little more than a guess, for of necessity he would not know for how long a time the interest would run.

While the petition fails to show where the $8000 of assets came from, and is silent as to whether it represents money paid in by stockholders on their assessments, or money remaining after those stockholders have been reimbursed, the answer avers that "This defendant has in his possession [not eight thousand dollars, but] the cash sum of $3119.37, together with certain real estate, notes, and choses in action, having an appraisal value of $7000. This defendant shows that payment of the principal amounts of the deposits in question was partially made out of collections realized under assessments levied against the stockholders of said bank, which said assessment collections totaled $10,908.62; and that said stockholders who paid said assessments have not been reimbursed to any extent on account of said assessments paid by them." The bill of exceptions recites that counsel for the plaintiffs admitted the facts thus alleged. The petition does not allege that all the debts of the bank have been paid, or that the funds in hand are sufficient to pay them. True, the petition alleges that the defendant has paid all costs and expenses connected with the liquidation of the bank, and in addition thereto has paid to plaintiffs and others similarly situated one hundred per cent. of the

principal amount of their claims, not including interest; but, as pointed out in the briefs filed by counsel for the plaintiff in error, by that part of the banking act now codified as § 13-821, taxes, judgments, contractual obligations, and unliquidated claims for damages and the like were made inferior to debts due to depositors. Consequently an allegation that all depositors have been paid is not the equivalent of a statement that debts inferior to depositors have been paid: "It is an elementary rule of construction, as applied to a pleading, that it is to be construed most strongly against the pleader; and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference will prevail in determining the rights of the parties." *Krueger* v. *MacDougald,* 148 *Ga.* 429 (96 S. E. 867). Greater certainty of pleading is required in mandamus than in ordinary cases. Orange Grocery Co. *v.* Leverett (Tex. Civ. App.), 282 S. W. 625; West *v.* Luttrell (Tex. Civ. App.) 35 S. W. 2d, 744. One of the reasons for this rule is always the prima facie presumption in favor of the good faith of the officer, and that he has done his duty. Compare *Davis* v. *Arthur,* 139 *Ga.* 74 (76 S. E. 676) ; *McGinty* v. *Gormley,* 181 *Ga.* 644, 649 (183 S. E. 804). The maxim is, omnia præsumuntur rite et solemniter esse acta, donec probetur in contrarium. *Bond* v. *Central Bank of Georgia,* 2 *Ga.* 92, 108.

The superintendent of banks is a statutory receiver. *McCaskill* v. *Chattahoochee Fertilizer Co.,* 167 *Ga.* 802, 807 (146 S. E. 830). As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on claims against the fund. The delay in distribution is a necessary delay, incident to the settlement of the estate. See Nickey *v.* Lonsdale Mfg. Co., 149 Tenn. 391 (258 S. W. 776) ; Thomas *v.* Western Car Co., 149 U. S. 95 (13 Sup. Ct. 824, 37 L. ed. 663) ; Tredegar Co. *v.* Seaboard Air Line Ry. Co., 183 Fed. 289 (105 C. C. A. 501) ; Boston &c. R. Co. *v.* Mercantile Trust &c. Co., 82 Md. 535 (34 Atl. 778, 38 L. R. A. 97) ; Forschirm *v.* Mechanics &c. Bank, 137 App. Div. 149 (122 N. Y. Supp. 168). In general, however, the courts, while recognizing the foregoing rule, nevertheless hold that if the estate does in fact turn out to be sufficient to meet all demands and leave a surplus, interest on all claims, whether they are interest bearing or not,

will be allowed the creditors during the administration of the estate by a receiver. See note in 39 A. L. R. 449, 458, to State ex rel. *v.* Park Bank & Trust Co., 151 Tenn. 195 (268 S. W. 638). The holdings of the courts of this State are in line with the current of authority on that subject. In *Macon Grocery Co.* v. *Mobley*, 174 *Ga.* 185 (162 S. E. 711), it was ruled: "Where a bank became insolvent and was taken in charge for liquidation by the superintendent of banks for this State, and a person had a claim against the bank which was afterwards adjudicated to be a preferred claim for a specified sum, and where after such final adjudication in favor of the standing of the claim as a preferred claim the superintendent of banks paid over the amount of the principal to the claimant, mandamus would not lie to compel the superintendent to pay interest accruing on the amount of the preferred claim after he took charge of such bank, where the fund had not produced interest." In the opinion it was. said: "The defendant contends that when a debtor becomes insolvent and his affairs are placed in the hands of a receiver for liquidation, it is just to all his creditors, regardless of the rank of their claims, that the amounts of their debts shall be calculated as of the date of the suspension; that the object of an insolvency proceeding is liquidation; that, the debtor being insolvent, the amount of the estate not being equal to the amount of his debts, there is not a sufficiency of assets to pay all the creditors, and it would be unjust and inequitable to take from one creditor, who receives no interest, money to pay interest to another. We think that the principle thus asserted, the soundness of which was recognized by the trial court in sustaining the general demurrer, is applicable in this case. That principle in a general way has been ruled by this court." Also, after citing *Johnson* v. *Moon*, 82 *Ga.* 247, 251 (10 S. E. 193), as sustaining the ruling, it was observed: "In principle that case is analogous to this. The bank was insolvent and was placed in defendant's hands for liquidation. The superintendent of banks is a receiver—a statutory receiver. *McCaskill* v. *Chattahoochee Fertilizer Co.,* 167 *Ga.* 802, 807 (146 S. E. 830)."

In *Standard Accident Insurance Co.* v. *Luther Williams Bank &c. Co.,* 51 *Ga. App.* 633 (181 S. E. 201), it was said: "In this case, where a bank is taken over by the superintendent of banks, deposits therein, or any other debts due by the insolvent bank,

do not bear interest from the date of the insolvency thereof until they are paid, and the liquidating agent thereof, or the corporation that has purchased the assets and liabilities of the defunct bank, would not ordinarily be liable to pay over to the State of Georgia, or to one subrogated to its rights by having been surety on the bond given by the insolvent bank as a State depository and having paid to the State the amount of its deposit in such bank in full, interest on such deposit, even though under the law the payment of such funds is declared prior to all other debts of the defunct bank, unless there was an agreement or contract between the State and such depository that the funds of the State deposited therein should bear interest. *Central Bank & Trust Cor.* v. *State,* 139 *Ga.* 54 (76 S. E. 587); *Lamar* v. *Taylor,* 141 *Ga.* 227 (7), 239 (80 S. E. 1085); *Macon Grocery Co.* v. *Mobley,* 174 *Ga.* 185 (162 S. E. 711). In *Central Bank & Trust Cor.* v. *State,* supra, there was a contract to pay interest on the deposit. See also notes in L. R. A. 1918E, 680; 42 A. L. R. 1297." It was also ruled (and we regard both rulings sound law) : "When a debtor becomes insolvent and his affairs are placed in the hands of a receiver for liquidation, it is just to all of his creditors, regardless of the rank of their claims, that the amounts of their debts shall be calculated as of the date of the suspension. The object of an insolvency proceeding is liquidation. The debtor being insolvent, and the amount of the estate not being equal to the amount of his debts, there is not a sufficiency of assets to pay all of the creditors, and it would be unjust and inequitable to take from one creditor, who receives no interest, money to pay interest to another. *Macon Grocery Co.* v. *Mobley,* supra." Counsel for the defendants in error insist, however, that the petition in the instant case is not governed by the general rule above stated, but by the exception; for that he shows that the assets of the bank are more than sufficient to pay the principal of all claims involved. For reasons heretofore pointed out, we are of the opinion that merely to allege that the defendant "has in his possession for the purpose of distribution more than eight thousand dollars" is not to allege that there is a surplus after meeting all other demands, in view of the demurrers challenging the absence of any allegation as to the source of the $8000, and the absence of an averment that there were funds available to pay interest on claims of other depositors;

and more particularly in view of the strictness required in pleading in mandamus cases. The conclusion here reached is not contrary to the decision in *Tharpe* v. *Gormley,* 184 *Ga.* 605 (192 S. E. 211), relating to interest on a tax execution. The foregoing ruling renders it unnecessary to rule on other questions presented by the record.

*Judgment reversed. All the Justices concur.*